James BOYSTER *v.* Teresa SHOEMAKE

CA 07-593

272 S.W.3d 139

Court of Appeals of Arkansas
Opinion delivered January 23, 2008

*Jerry Pruitt*, for appellant.

*Walters, Gaston, and Ridgley*, by: *Bill Walters*, for appellee.

WENDELL L. GRIFFEN, Judge. On April 23, 2007, the Sebastian County Circuit Court entered an order finding that appellee Teresa Shoemake presented proof of a boundary line by acquiescence between property belonging to her and appellant James Boyster. Appellant asserts that the circuit court clearly erred in making that finding, contending that appellee failed to prove that there was any mutual assent in establishing the boundary line. We affirm, holding that the circuit court did not clearly err in finding that appellee presented sufficient evidence of mutual recognition of a boundary line by acquiescence. However, we remand the case with instructions to amend the decree by adding a more specific description of the boundary line between the parties' land.

The parties are adjacent landowners in southern Sebastian County, with appellee's property located south of appellant's. Appellee, who acquired title to the property in 1996, alleged that the parties had acquiesced to an old fence north of the true boundary line. According to her testimony, the boundary-line dispute arose in summer 2005 when she lost several hunting dogs on her property. When she went to the disputed area on her four-wheeler to find the dogs, appellee saw that the fence had been cut, rocks had been picked up, and trees had been cut down. She saw appellant's wife and asked, "What are you guys doing?" Appellee then learned that appellant had surveyed the property and discovered that the fence line was not on the boundary. Appellee described the fence as an old, rusty fence that had grown into the trees and stated that the fence had been on the property her entire

life. She noted that her property was enclosed by fence on the west, north, and east sides. A highway was located on the south boundary of her property.

Appellee testified that her grandmother acquired the property in 1942 and that the property passed to her grandfather in 1945 after her grandmother's death. Appellee was born in 1959, and she recalled visiting the property frequently. She noted that in the 1960s, the property on the other side of the fence was used as pasture land. She never saw anyone other than her family use the property south of the fence. Her family's side of the fence contained trees, which had not been used for anything other than Christmas trees and recreation.

Appellee stated that the Shockleys sold their property to Bryan Tatum, appellant's immediate predecessor in interest. She recalled a conversation with him where he acknowledged the fence line as the boundary line. During that conversation, he asked her if he could dig across her property and install a water line. After several days, she allowed him to dig across if he would brush hog the property. Appellee stated that she had a good relationship with Tatum and that he never questioned her about the fence being the property line.

Appellee also presented the testimony of many others. Jackie Paxton hunted on the property with appellee's father, Bob Higginbotham, and testified that Higginbotham instructed him that the property ended at the fence line. Paxton described the fence as in "decent" condition, and did not see evidence of anyone north of the fence making use of the property south of the fence. Alan Jones also hunted on the property with his grandfather and testified that his grandfather told him that appellee's property extended to the fence line. Tommy Dale Jones cut Christmas trees from the property and testified about the north property being used as pasture. Margaret Ann Williams, who moved to the area in September 1997, never saw evidence of anyone north of the fence using the property south of the fence.

Pamela Sullivan was formerly married to Robert Shockley and was familiar with the tract now owned by appellant. She testified that she and her former husband ran a dairy farm operation on the north tract until the 1980s. She and her husband then moved to Greenwood and started subdividing and selling the property. The first piece was sold to Tatum, and she did not return to the property on a regular basis after that point. Sullivan had no recollection of the fence on the property.

Tatum testified that he purchased his property from the Shockleys sometime after 2000. He stated that his ten acres were clear-cut timber and described the land as a "veritable nightmare," as it took two or three weeks of heavy dozer work to clear it. He denied seeing a fence on the property except for one on five acres of part of the property. Tatum recalled approaching appellee to discuss an easement over her property. He stated that she originally refused to allow the easement, but the two later agreed that he could install the water line if he brush hogged her property. He did not recall discussing the fence line or any other boundary with appellee.

Appellant testified that he looked at the property before purchasing it from Tatum and that Tatum's property appeared to have been recently bulldozed. He stated that he found a fence while measuring the property, but that a person could not walk down the road and see the fence because the fence was in poor condition. When seeing the fence, he opined that it was constructed to keep something on or off the nearby highway. He also noted that he never saw anyone use the property south of the fence and that he never discussed the property line until the instant dispute.

In an order dated March 17, 2006, the circuit court found that appellee established a boundary line by acquiescence and quieted title to the disputed tract in her name. Appellant prosecuted an appeal, but that appeal was dismissed for lack of a final order, as the circuit court failed to address a conversion claim. *See Boyster v. Shoemake*, CA 06-744 (Ark. App. Mar. 14, 2007) (not designated for publication). The circuit court addressed the claim in its final judgment entered April 24, 2007, and appellant filed a timely notice of appeal.

For his sole point on appeal, appellant contends that the circuit court clearly erred in finding that the fence line was established as the boundary line by acquiescence. He argues that mutual assent to the boundary line is a key component of establishing a boundary line by acquiescence and asserts that appellee failed to prove that there was any mutual assent.

Although we review equity cases de novo on the record, we do not reverse unless we determine that the circuit court's findings of fact were clearly erroneous. *Robertson v. Lees*, 87 Ark. App. 172, 189 S.W.3d 463 (2004). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that

a mistake has been committed. *Conner v. Donahoo*, 85 Ark. App. 43, 145 S.W.3d 395 (2004). In reviewing the circuit court's findings, we give due deference to the circuit judge's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*

The mere existence of a fence or some other line, without evidence of mutual recognition, cannot sustain a finding of boundary by acquiescence. *Warren v. Collier*, 262 Ark. 656, 559 S.W.2d 927 (1978); *Robertson, supra.* However, silent acquiescence is sufficient, as the boundary line is usually inferred from the parties' conduct over so many years. *Warren, supra; Hicks v. Newton*, 255 Ark. 867, 503 S.W.2d 472 (1974). A boundary by acquiescence may be established without the necessity of a prior dispute or adverse use up to the line. *Rabjohn v. Ashcraft*, 252 Ark. 565, 480 S.W.2d 138 (1972). For a party to prove that a boundary line has been established by acquiescence, that party must show that both parties at least tacitly accepted the non-surveyed line as the true boundary line. The mere subjective belief that a fence is the boundary line is insufficient to establish a boundary between two properties. *Webb v. Curtis*, 235 Ark. 599, 361 S.W.2d 87 (1962).

Appellant discusses *Robertson, supra,* in support of his argument for reversal. In *Robertson*, we affirmed a finding that the appellant failed to prove a boundary by acquiescence despite testimony that members of his family maintained the disputed property, that no one else claimed the disputed property, and that everyone in appellant's family considered the fence to be the boundary line. The record contained very little testimony regarding the construction of the fence. While the appellant relied on the appellee's silence regarding the issue, we noted that the appellee was not silent on the matter, telling another party not to mow the disputed tract. There was also an absence of testimony showing that anyone on the appellee's side of the property considered the fence to be the property line.

Appellant compares the evidence in the instant case to that in *Robertson* and contends that appellee failed to present any evidence that he or any of his predecessors in interest consider the fence line to be the boundary. He is mistaken, as appellee testified that Tatum acknowledged the fence as the boundary line. While appellant describes this as "self-serving testimony," it was within the province of the circuit court to find her credible, and our standard of review requires us to defer to the circuit court's reliance on her testimony. *Conner, supra.* In addition to appellee's

testimony that Tatum acknowledged the fence as the boundary line, testimony from appellee and her witnesses established that no one north of the fence used the property south of the fence and that property north of the fence was pasture, while property south of the fence was woods. Appellee presented sufficient evidence to establish that appellant and his predecessors in interest recognized the fence line as the boundary between the two properties.

▮ Because the circuit court did not err in finding that appellee established that the fence line between the two properties was the boundary by acquiescence, we affirm. However, the trial court order in this case lacks a specific description of the boundary line. A final order in a boundary line dispute must describe the boundary line between disputing land owners with sufficient specificity that it may be identified solely by reference to the decree. *Petrus v. Nature Conservancy*, 330 Ark. 722, 957 S.W.2d 688 (1997); *Penland v. Johnston*, 97 Ark. App. 11, 242 S.W.3d 635 (2006). In *Jennings v. Buford*, 60 Ark. App. 27, 35, 958 S.W.2d 12, 16 (1997), we noted that the decree there lacked a specific description on the boundary line in question, but we noted that the line described in that case was specifically described as "the meandering fence 'reflected by the Askew survey.' " We held that the lack of specificity in the order was not reversible error, but was a mere omission or oversight that could be corrected pursuant to then Rule 60(a)[1] of the Arkansas Rules of Civil Procedure. Accordingly, we granted leave to the lower court to amend the decree by adding a more specific description of the boundary line between the parties' land. We recently did the same in *Adams v. Atkins*, 97 Ark. App. 328, 249 S.W.3d 166 (2007), when the order identified the boundary line as reflected in the Higby survey as the true and correct boundary line between the properties in question. In the present case, the order also lacks a specific description of the boundary between the properties, but the order clearly references a survey identifying the established boundary line as the fence on the south side of the old Slaytonville Road. As we did in *Jennings* and *Adams*, we grant leave to the circuit court to amend the decree by adding a more specific description of the boundary line between the parties' land.

Affirmed and remanded with instructions.

---

[1] Now Rule 60(b). *See* Rule 60, Addition to Reporter's Notes, 2000 Amendment.

PITTMAN, C.J., GLADWIN, ROBBINS, and BIRD, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. *Res est misera ubi jus est vagum et uncertum.* I submit that the common law concerning real property remained for more than a century and a half much the same as it existed in England on March 24, 1606, the date specified in our reception statute. See Ark. Code Ann. 1-2-119 (Repl. 1996). However, in the last decade, particularly where the common law regarding acquiescence is concerned, it has morphed into an unrecognizable state, courtesy of the Arkansas Court of Appeals. To arrive at its current low-water mark, I believe the majority has made mistakes of both fact and law.

While I do not usually recount facts when I write a dissent, I believe that I must do so in this case to correct what I believe is an overly simplistic understanding of the nature and situation of the parties' real-estate. This case involves a disputed trapezoid-shaped piece of rugged, unimproved land. One side of the trapezoid measures 234.5 feet along the Boysters' western boundary and the parallel side measures 69.6 feet along their eastern boundary. A gravel road bounded on the south by the remnants of a fence cuts across the Boysters' property at approximately a thirty-degree angle. The disputed property lies within the legal description in the deed to ten acres of land that the Boysters acquired from Bryan Tatum in June 2004.

Tatum had been the owner of record since 2000 when his ten-acre plot was subdivided from what had been a 400 acre dairy farm owned by the Shockley family. Not surprisingly, much of the land comprising the dairy farm was open pasture land. However, the disputed land lies in the far southwest corner of the dairy farm, and it was apparently too rugged and tree-covered to use as pasture. It was variously described by Shoemake and her witnesses as "bobcat country," "a cliff," and "pretty much nature." The rugged character of the land was confirmed by ground-level and aerial photographs that were entered into evidence. Significantly, there was not a shred of disagreement among the witnesses, including Shoemake herself, that the fence was constructed to "hold cattle." I do not believe it requires a great leap of logic to surmise that the fence was constructed for no other purpose than to keep the dairy cows from the "cliff."

It is true that Shoemake presented testimony from herself, relatives, a family friend, and a neighbor who occasionally walked

on the property, that Shoemake and her grandfather regarded the fence as the boundary. Also true, as the majority notes, not one of Shoemake's witnesses testified that they saw any activity — not even cows grazing — on the part of any owners of record of the disputed property, on either side of the fence. However, I simply cannot offend common sense by assigning this fact any legal significance whatsoever. When one has a 400 acre dairy farm, how much time would any one be expected to spend on the few acres of land that was unsuited for grazing cows?

The majority is correct when it acknowledges that the only evidence of *mutual recognition* of the fence as a boundary came from Shoemake's testimony that Tatum "knew" that the disputed tract was her property. However, even crediting this testimony as we must under the standard of review, it establishes acquiescence for less than seven years. It is therefore less than the seven-year limitation period required for adverse possession, and presumably much less than the "many years" that the parties must treat a fence line to establish a boundary by acquiescence. *Summers v. Dietsch*, 41 Ark. App. 52, 849 S.W.2d 3 (1993).

Our supreme court has repeatedly held that the mere existence of a fence without evidence of mutual recognition is insufficient to establish a boundary by acquiescence. *Warren v. Collier*, 262 Ark. 656, 559 S.W.2d 927 (1978); *Fish v. Bush*, 253 Ark. 27, 484 S.W.2d 525 (1972); *Carney v. Barnes*, 235 Ark. 887, 363 S.W.2d 417 (1962). However, today the majority has overruled this clear precedent to hold that proof of the *mere existence* of an old fence is sufficient evidence to establish a boundary by acquiescence.

Finally, I believe it is worth noting that the majority's decision today represents, at best, a pyrrhic victory for Shoemake. As noted previously, the disputed tract of land is trapezoid-shaped because the fence cuts across the Boysters' land at an angle. All of the Boysters' land lies north of a portion of just one of Shoemake's four forty-acre parcels. The remainder of that forty and three others border the almost 400 acres that comprised the old dairy farm. While the fence line favors Shoemake where her property borders the Boysters, farther to the east, it dips significantly into the surveyed description of her property. I submit that because of judicial estoppel, Shoemake will not be able to assert that the fence line is not the property line if Shockley or his successors choose to assert title to the property on their side of the fence.

I respectfully dissent.