2010 Ark. App. 319

**Rex THURLKILL, Appellant**

v.

**Thelon WOOD and Nancy Wood, Trustee of the Wood Family Irrevocable Trust, Appellees.**

**No. CA 09–1163.**

Court of Appeals of Arkansas.

April 14, 2010.

Matthew Joseph Sepherd, Thomas, Hickey & Shepherd, L.L.P., El Dorado, for Appellant.

Brian H. Ratcliff, Shackleford, Phillips & Ratcliff, P.A., El Dorado, for Appellee.

RITA W. GRUBER, Judge.

This lawsuit is about a dispute over the ownership of a .849–acre parcel of land in Union County. Appellant Rex Thurlkill, the record owner of the property, appeals from an order of the Union County Circuit Court quieting title to the property in appellees Nancy Webb Wood, Trustee of the Wood Family Irrevocable Trust, and Thelon Wood (the "Woods"). The circuit court found that an old fence line—located approximately 164 feet east of the boundary described by Mr. Thurlkill's deed—had become the boundary by acquiescence between the parties. We find no clear error and affirm the circuit court's order.

Mr. Thurlkill is the record owner of land in Union County, more particularly described as follows:

> All that portion of the Northwest Quarter of the Northwest Quarter of the Northwest Quarter of Section 2, Township 19 South, Range 15 West, Union County, Arkansas, lying West of Iron Mountain Road, LESS AND EXCEPT the South 15.0 acres, being 3.466 acres more or less.

Mr. Thurlkill acquired the property in 1992 from his father, Percy, who had operated a grocery store on the property since 1954. When Mr. Thurlkill took over the property in 1992, he rebuilt the old store and continued to operate it.

The Woods own the fifteen acres directly south of Mr. Thurlkill's property, excluded in the description set forth above. They also own forty acres west of Mr. Thurlkill's property. Thus, they share common boundaries on the south and west sides of Mr. Thurlkill's land. The dispute in this case is over Mr. Thurlkill's western boundary line and the Woods' eastern boundary line.

Mr. Thurlkill filed a complaint seeking to quiet title in the disputed property based on his record ownership. The Woods responded and filed a counterclaim seeking to quiet title in the same property under the theories of adverse possession and boundary by acquiescence. After a bench trial, the circuit court entered judgment dismissing with prejudice Mr. Thurlkill's complaint and granting the Woods' counterclaim for quiet title under the theory of boundary by acquiescence. Mr. Thurlkill filed this appeal.

An action to quiet title sounds in equity. *Putman v. Cox,* 2009 Ark.App. 304, at 1, 2009 WL 1076825 (citing *Walker v. Peay,* 22 Ark. 103 (1860)). We review matters that sound in equity de novo on the record with respect to questions of both law and fact, but we will not reverse a trial court's fact findings unless they are clearly erroneous. *Id.* (citing *Hollandsworth v. Knyzewski,* 353 Ark. 470, 109 S.W.3d 653 (2003)). A finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court reviewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Ward v. Adams,* 66 Ark.App. 208, 210, 989 S.W.2d 550, 551 (1999). In reviewing a trial court's findings of fact, the appellate courts give due deference to the trial court's superior position to determine witness credibility and the weight to be accorded their testimony. *Steele v. Blankenship,* 2010 Ark. App. 86, 377 S.W.3d 293.

Mr. Thurlkill challenges the circuit court's finding on appeal, contending that there was insufficient evidence to prove mutual recognition of a boundary by acquiescence. He argues that there was no intent or agreement regarding the boundary suggested by the Woods and that the

fence, which Mr. Thurlkill contends never existed, does not exist today.

Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence. *Myers v. Yingling*, 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008). A boundary line by acquiescence is inferred from the landowners' conduct over many years implying the existence of an agreement about the location of the boundary line; in such circumstances, the adjoining owners and their grantees are precluded from claiming that the boundary so recognized and acquiesced in is not the true one, although it may not be. *Id.* A boundary line by acquiescence may exist without the necessity of a prior dispute. *Harris v. Robertson*, 306 Ark. 258, 813 S.W.2d 252 (1991). Although neither the mere existence of a fence nor one party's subjective belief that a fence is the boundary line will sustain a finding of acquiescence, express recognition or agreement between the parties is not necessary. *Boyster v. Shoemake*, 101 Ark.App. 148, 152, 272 S.W.3d 139, 143 (2008). Tacit acceptance will suffice, and silent acquiescence is sufficient where mutual recognition of the boundary line can be inferred from the conduct of the parties over a period of years. *Id.*

Two surveyors, Chris de France and Samuel Paulus, testified that the origin of the mistaken boundary in this case is an anomaly in the General Land Office Plat filed in 1845. Mr. Thurlkill's northern boundary line, running east and west, is not only a section and quarter line but is also part of a line separating Township 19 South from its adjacent unit to the north, Township 18 South. The east and west sides of these township blocks are formed by range lines running north and south and spaced at even intervals from the fifth principal meridian. Due to the curvature of the earth, however, range lines converge as they run north, and thus the distance between the lines decreases. To make up for this decrease, the east-west township lines must be shortened, or offset, in order to fit the same number of sections and quarters into the smaller space. This causes certain sections to have less than the standard 640 acres. The offset in the lines and corners and the length of the offsets are noted in the 1845 government plat, entered as an exhibit at the hearing. Important to this case, when such an offset is made, the section and quarter lines do not share common corners with the adjacent sections and quarters to the north or south, which results in an offset corner.

The government plat and Mr. de France's survey indicate that an offset of 164.12 feet to the east from Mr. Thurlkill's northwest corner to the southwest corner of the adjacent tract to the north in Township 18 South exists. The owner of the north tract in Township 18 South is Guy Webb, who marked his corner with a tall four-inch pipe and ran his fences north, west, and east from that corner. Unaware of the offset and in the mistaken belief that Mr. Webb's southwest corner was also a common corner among these parties—that is, Mr. Thurlkill's northwest corner and the Woods' northeast corner—the Woods and their predecessors ran their fence south from that tall pipe, or offset corner. Thus, the fence was not on the record boundary line but rather 164.12 feet east of the record boundary line. But neither of the parties in this case was aware of the 164—foot offset long established by the government plat.

Appellee Nancy Wood testified that in 1926 her father-in-law, Benjamin Franklin Wood, purchased 40 acres west of what is now Mr. Thurlkill's property. Until 1971, he lived on the property and used it for

farm land and to raise timber. Nancy married Benjamin's son, Thelon, in 1953, and the 40 acres was eventually conveyed to the Wood Family Irrevocable Trust. Thelon purchased 15 acres due south of Mr. Thurlkill's property in 1957, which was also eventually conveyed to the Wood Family Irrevocable Trust.

Nancy testified that she remembered a fence on the disputed boundary line being in existence in 1953 and remembered helping the Wood family harvest corn from a field right next to the fence. The disputed area was terraced for farming at that time under a contract between Benjamin Wood and the Union County Soil Conservation District, which required Benjamin to adjust terraces to meet district specifications. In the late 1950s, Benjamin planted pine trees on the disputed property through a program with the U.S. Department of Agriculture. The Woods introduced receipts to show that they harvested timber on the property in 1986, 1995, 1996, and 1999. And photographs showed rotting stumps on the disputed tract.

Guy Webb testified that a fence had run south, between the Woods and Thurlkill tracts, from the tall four-inch pipe since at least the 1960s. He said it was a net wire fence and looked as if it had been there for some time when he first saw it in 1960 or '61. He said there were terraces on the Woods' side of the fence.

A tornado in 2005 destroyed part of the fence. Keith Jolly testified that in 2005 he harvested some damaged trees near the corner of the Webb, Wood, Thurlkill tracts. He said there was a fence running north and south from the Webb property to a tall pole, the four—inch pole, and that the fence continued south between the Wood and Thurlkill properties. He flagged the old fence row—which he testified was "fairly easy" to find in the trees—between the Wood and Thurlkill tracts and

paid Mr. Thurlkill for the trees on his side of the fence. Mr. Jolly testified that, when he delivered the check to Mr. Thurlkill, Mr. Thurlkill said he did not know he had any timber back there.

Mr. Thurlkill denied that there was ever a fence and testified that the twelve-to-fourteen foot fence from the tall pole was just to stop the four-wheelers from getting on his property. He testified that he was paid for timber harvested on the property after the tornado as record owner of the property. He also testified that the Woods never harvested timber from his land and Mr. Thurlkill claimed that his father had timber harvested in 1987 or 1988, but there were no receipts to prove it.

The circuit court found by a preponderance of the evidence that the parties and their predecessors had occupied their respective tracts based on their mistaken belief that the tall four-inch pipe corner was their common corner. Only after recent surveys revealed the mistake did Mr. Thurlkill object to the location of the boundary line. Accordingly, the circuit court quieted title in the Woods to the disputed property under the theory of boundary by acquiescence. After a de novo review of all the evidence in this case—including the 1845 government plat, the surveys, and the testimony of the parties and various neighbors—we cannot say that the circuit judge clearly erred in this finding, and we affirm the court's judgment.

Affirmed.

MARSHALL and BAKER, JJ., agree.