2012 Ark. App. 65
**Sebastian STADLER, Appellant**
v.
**Betty Ann WARREN, Leroy Warren, Richard Scott Warren, and Stephen Craig Warren, Appellees.**

**No. CA 11–353.**

Court of Appeals of Arkansas.

Jan. 18, 2012.

Jon Rodgers Sanford, Russellville, for appellant.

Bruce Roger Wilson, Clarksville, for appellee.

RITA W. GRUBER, Judge.

At issue in this case is the location of the boundary line between the parties, who are adjoining landowners. Appellant, Sebastian Stadler, filed a petition for declaratory judgment and injunction for the circuit court to establish the line between the parties' property as that reflected on a survey of the property line described in the parties' deeds and not by the long-standing fence and to enjoin appellees from moving, disturbing, or destroying any markers or fences erected by appellant consistent therewith. Appellees, Betty Ann Warren, Leroy Warren, Richard Scott Warren, and Stephen Craig Warren contended that a fence that had been on the property for over fifty years was the boundary line and that they had adversely possessed the property up to the fence. After a hearing, the court denied appellant's petition, found that the boundary line dividing the parties' property was the long-standing fence line, and also found that appellees and their predecessor's use of the property satisfied the elements of adverse possession for the statutory time period. On appeal, appellant argues that the trial court clearly erred in finding boundary by acquiescence and adverse possession. We affirm the trial court's decision.

The property in dispute consists of a strip of land 16.9 feet wide and 219.12 feet long that runs the length of the parties'

property where the tracts adjoin. Appellees inherited their property from appellee Betty Ann Warren's father, Bernie Ross, in 2005. Mr. Ross had owned the property since 1940.

Appellant purchased his tract in 2003 from the Clark Family Trust and planned to build a subdivision. He hired James Higby to survey the property. The survey revealed that a barbed-wire fence along the west side of his property was inside his property line and that there was 16.9 feet between the deed line and the fence separating the parties' property. The fence actually ran along appellant's property line for about 450 feet, but only 219 feet share a common boundary with appellees. In 2004, appellant took down the long-standing fence and filed a petition for declaratory judgment to establish that the boundary line dividing the parties' property was not the old fence but the boundary described by the parties' legal descriptions and Mr. Higby's survey of those descriptions.

Appellant's predecessor in title, Larry Ray Clark, testified that he inherited the property in 2002 from his parents, Haston and Marie Clark, who were given the property by Marie's parents, Webb and Bertha Hamilton, in the late 1980s. Larry testified that his maternal grandparents used the land as a "truck farm growing vegetables" from at least 1960, but noted that the part that shared a border with appellees was woods and was not farmed. He said that when his parents obtained the property, they leased it to Junior Massingale, who operated a cattle farm on the property. Larry remembered the fence that was used to keep the cattle in.

Joann Massingale testified that she and her husband, Arvin Massingale, Jr., leased the property from Haston Clark in the 1990s and kept cattle on the property until 2003, when appellant purchased the property. She said that there was a fence on the property when the lease began and that she and her husband occasionally made repairs to it. She said that they never discussed the fence with the Clarks or appellees, but they assumed that the fence was the boundary line.

John Helmert, who owns property immediately south of appellees' property and adjoining appellant's property along the fence line, testified that he remembered the fence being in existence since 1979 when he married his wife, who owned the property, and he understood it to be the boundary between their property and the property to the east of their property, now owned by appellant. He said that he remembered cattle being on the east side of the fence. He testified that he understood that the fence was for the purpose of livestock and that it was the property boundary line.

David Earl Hammond testified that he was raised on appellees' property because Bernie Ross was his uncle. He said he had been familiar with the property his entire life. He testified that he was born in 1948 and that the fence existed when he was a kid. He assumed that it was the boundary line and that his family, appellees and their predecessor, owned the land west of the fence line. He testified that when he was growing up, a neighbor bush-hogged the property and Webb Hamilton did some "truck-patch farming" on the land on the east side of the fence. He also remembered the Massingales' "running cattle" on the east side of the fence.

Don Feikema testified that he had lived in Johnson County since 1946, that he was familiar with appellees' property, that he had been aware of the existence of the fence since 1947 or 1948, and that the fence was on the property when Bernie Ross bought it. He also said that he had helped repair the fence several times, that he mowed up to the fence line for Mr.

Ross sometimes so their kids could watch the cattle on the other side of the fence, that Mr. Ross told him the fence was the boundary line, and that he understood the fence to be the boundary line.

Robert Carter testified that he maintained the fence line for Mr. Ross by clearing the brush every few years on Mr. Ross's side of the fence from 1965 until 1975. He said that Mr. Ross told him the fence was the boundary line and that it had been on the property when Mr. Ross bought it.

Appellee Betty Ann Warren, who with her sons inherited the property from her father Bernie Ross in 2005, testified that she had lived on the land all of her life until she married in 1965 and moved a mile down the road. She said she had been familiar with the property for over sixty years. She said that the fence had been there for as long as she could remember, that her dad worked and kept equipment by the fence, that her sons played by the fence when they were young, that her step-grandfather grew peanuts near the fence in the 1970s, and that her dad stockpiled gravel and dirt there until his death in 2005. She also said that she and her cousin played by the fence when she was growing up. She testified that her dad had hauled dirt to make the land level to the fence. She said that the fence line had always been the recognized boundary line.

The circuit court found that the boundary line dividing the parties' property was the long-standing fence line. The court reasoned that the fence had been in existence along the boundary for over fifty years, not only along appellees' property but along the property north and south of appellees' property bordering appellant's western property line for 450 feet. This line was also recognized by those landowners as the eastern boundary line of their property. The court found that the gener-al understanding in the community was that the fence was the boundary line. The court noted that the testimony revealed that appellees and their predecessor, Mr. Ross, had used the land up to the fence for years; that the property was mowed up to the fence; that Mr. Ross stored and deposited fill dirt up to the fence to improve the grade of the property; and that peanuts had been cultivated on the property up to the fence line for a period of time. The court found that appellees and their predecessors had satisfied the elements of adverse possession for the statutory time period.

We traditionally review quiet-title and boundary-line actions de novo. *Strother v. Mitchell*, 2011 Ark. App. 224, at 16, 382 S.W.3d 741, 751–52. We will not, however, reverse findings of fact unless they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Dye v. Anderson Tully Co.*, 2011 Ark. App. 503, at 4, 385 S.W.3d 342, 345–46. In reviewing a circuit court's findings of fact, we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.*

Appellant contends that the circuit court clearly erred in finding that the fence line was the boundary line between the parties under either a boundary-by-acquiescence or adverse-possession theory. We turn first to the court's finding that the fence line had become a boundary by acquiescence.

Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by ac-

quiescence. *Myers v. Yingling,* 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008). A boundary line by acquiescence is inferred from the landowners' conduct over many years implying the existence of an agreement about the location of the boundary line; in such circumstances, the adjoining owners and their grantees are precluded from claiming that the boundary so recognized and acquiesced in is not the true one, although it may not be. *Id.* A boundary line by acquiescence may exist without the necessity of a prior dispute. *Harris v. Robertson,* 306 Ark. 258, 813 S.W.2d 252 (1991). Although neither the mere existence of a fence nor one party's subjective belief that a fence is the boundary line will sustain a finding of acquiescence, express recognition or agreement between the parties is not necessary. *Boyster v. Shoemake,* 101 Ark.App. 148, 152, 272 S.W.3d 139, 143 (2008). Tacit acceptance will suffice, and silent acquiescence is sufficient where mutual recognition of the boundary line can be inferred from the conduct of the parties over a period of years. *Thurlkill v. Wood,* 2010 Ark. App. 319, at 3–4, 374 S.W.3d 790, 793. Finally, adverse usage up to a fence is not required to establish a boundary by acquiescence. *Myers v. Yingling,* 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008).

In this case, appellees introduced the testimony of seven witnesses who all testified that it had been their understanding for over fifty years that the fence was the boundary line. Don Feikema and Robert Carter also testified that Mr. Ross, appellees' predecessor who purchased the property in 1940, told them the fence was on the property when he purchased it and that it was the eastern boundary line of his property. Appellant's predecessor in title, Larry Clark, who had never lived on the property or even in Arkansas, testified that after his parents obtained the property in the late '80s, they had always leased it, as he had continued to do until he sold it to appellant. He also said that he did not remember a time when the fence was not in existence and that he never had any discussions with appellees about the fence. Appellant presented no testimony that the fence was not considered the boundary line.

Appellant argues that no *owner* of either tract of land gave any indication, verbally or through his conduct, that the fence was the boundary line. He relies on the supreme court's decision in *Raborn v. Buffalo,* 260 Ark. 531, 542 S.W.2d 507 (1976), for his argument that a tenant does not have standing to bind a landowner to a boundary by acquiescence. *Raborn* involved the issue of whether land allegedly obtained by adverse possession or boundary by acquiescence could bind a remainderman (the fee simple owner) when the land was occupied by the life tenant. The court held that these theories were not effective against a remainderman until the life tenancy terminated.

Appellant contends that *Raborn* stands for the proposition that boundary by acquiescence cannot occur where land on one side of the alleged boundary is occupied by a tenant. First, appellant cites no case, and we have found none, supporting this theory or applying the holding in *Raborn* to any facts other than those in *Raborn.* Second, appellant's property was not always leased. Appellant's predecessor in title, Mr. Clark, testified that his parents leased the property in the late '80s. The testimony established that Mr. Clark's grandparents had "truck-farmed" on the property for decades before that time. Moreover, testimony indicated that the fence was on the property since at least 1940, when Mr. Ross purchased his tract.

In reviewing a circuit court's findings of fact, we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Dye v. Anderson Tully Co.*, 2011 Ark. App. 503, at 4, 385 S.W.3d 342, 345–46. We hold that the circuit court did not clearly err in finding a boundary by acquiescence on the facts presented. Because we uphold the court's finding on this issue, we need not determine whether appellees adversely possessed the property. Adverse usage up to a fence is not required to establish a boundary by acquiescence. *Myers v. Yingling*, 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008).

Affirmed.

MARTIN and BROWN, JJ., agree.