SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-13-782

| | |
|---|---|
| HOWARD STACY and CLIFFORD STACY<br><br>APPELLANTS<br><br><br>V.<br><br><br><br>JIMMIE DIXON and LEANN DIXON<br>APPELLEES | **Opinion Delivered** May 21, 2014<br><br>APPEAL FROM THE BOONE COUNTY CIRCUIT COURT<br>[NO. CV-2008-216-3]<br><br>HONORABLE JOHN R. PUTMAN,<br>JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellants Howard Stacy and Clifford Stacy file this one-brief appeal from the May 24, 2013 final decree and vesting of title to real estate, which incorporates the May 17, 2013 order filed by the Boone County Circuit Court quieting title to the disputed land in favor of appellees Jimmie Dixon and Leanna Dixon. The Stacys argue that the circuit court erred in its application of the law and in finding that (1) the Dixons own the land under either adverse possession or boundary by acquiescence, and (2) the parties did not have an agreed boundary line. We affirm the circuit court's determination that appellees own the land in question by means of a boundary line by acquiescence.

The parties to this case are longstanding neighbors who own adjoining tracts of land in northern Boone County, Arkansas. The disputed tract is a 1.44-acre piece of property that runs along the western edge of the Stacys' property and the eastern edge of the Dixons' property, bounded on the south by Highway 14. One section of the property consists of a

driveway to the Dixon homes off of Highway 14, and there had been a fence along the eastern edge of the property. After the driveway ends, there is a "field road" that continues into the field, north of Jimmie Dixon's house, that is used by the Dixons. The property at issue has been used by the Dixons as a driveway and small garden, and to graze cattle, but the Stacys claimed to have legal title to the property according to a survey.

The land in question has been in the families of the parties for many years, with Jimmie Dixon's parents buying the land in 1968. The driveway to the Dixon homes has been used for many years, and the fence was old and has been in place for a significant time as well. The Dixons thought that they owned the property to the fence line.

The parties had cooperated in the past regarding re-fencing along their adjoining boundary lines. The old fences were torn down, dozed out, and new fences were put up—one in 1998 and another in 2003. For those two re-fencing projects, the new fence was placed on the surveyed line. This was done for two adjoining property lines until the line in question was to be re-fenced beginning in 2006. At that time, the old fence was dozed out, and the line was surveyed. The fence was contrary to that surveyed line.

Jimmie Dixon would not agree to the installation of the fence on the surveyed line. He was to "check his papers" and get back to the Stacys, but litigation was initiated after they did not hear back from the Dixons. The Stacys filed a petition to quiet title to the property in question and for a permanent injunction and related damages. The Dixons counterclaimed stating "that the above described tract has been used as driveway and yard by the [Dixons] for more than the past 7 years and that the fence was the dividing line."

2

The circuit court ruled in favor of the Dixons on two alternative theories: one, that the Dixons adversely possessed the land in question; and, two, that there existed a boundary line by acquiescence. The circuit court ruled that the Stacys thought that they had an agreement, but that there was no boundary by oral agreement. The circuit court ruled that under either theory title to the property vested in the Dixons no later than February 1999.

We recently reiterated in *Reynolds v. GFM, LLC*, 2013 Ark. App. 484, ___ S.W.3d ___, that a fence, by acquiescence, may become the accepted boundary even though it is contrary to the survey line. *See also Strother v. Mitchell*, 2011 Ark. App. 224, 382 S.W.3d 741. When adjoining landowners occupy their respective premises up to the line they mutually recognize and acquiesce in as the boundary for a long period of time, they and their grantees are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one, although it may not be. *Reynolds, supra.* A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Id.* We have been clear that it is the agreement and acquiescence, not the fence itself, that controls. *Id.* The intention of the parties and the significance they attach to the fence, rather than its location or condition, is what is to be considered. *Id.* Moreover, neither a prior dispute about the boundary line nor adverse usage up to a fence is required to establish a boundary by acquiescence. *Id.*

Because the location of a boundary is a disputed question of fact, we will affirm the circuit court's finding unless it is clearly against the preponderance of the evidence. *Reynolds, supra.* A finding is clearly erroneous when, although there is evidence to support it, the

3

SLIP OPINION

reviewing court on the entire evidence is left with a definite conviction that a mistake was committed. *Id*. Whether a boundary line by acquiescence exists is to be determined from the evidence in each individual case. *Id*.; *see also Strother*, *supra*.

In the case at bar, the circuit court found that the Dixons owned the land in question "up to where the old fence was located by either adverse possession o[r] acquiescence." We hold that, although the Dixons prevail under either theory, title by virtue of a boundary by acquiescence is the more appropriate basis for the circuit court's finding. The Dixons' evidence of their use and maintenance of the property in question, as well as the Stacys' long standing mutual recognition of the fence as the boundary in their day-to-day treatment of the property supports this finding, despite their assertion that they always intended to use the property and fence the property that they actually owned.

Additionally, we hold that the evidence supports the circuit court's finding that the Stacys did not establish an enforceable oral agreement with the Dixons to place the new fence on the surveyed boundary line. The circuit court cited *Miller v. Neil*, 2010 Ark. App. 555, 377 S.W.3d 425, and the four factors that must be present to enforce an oral boundary-line agreement: (1) there must be uncertainty or dispute about the boundary line; (2) the agreement must be between the adjoining landowners; (3) the line fixed must be definite and certain; and (4) there must be possession following the agreement. *Id*. at 5, 377 S.W.3d at 428. The circuit court found that, even assuming the first three factors were present, there was never possession of the land in question following any such agreement, as no new fence was built on the survey line.

Because we find no error with the circuit court's findings with respect to both the Dixons owning the property by virtue of boundary by acquiescence and the lack of an oral boundary-line agreement between the parties, we affirm the circuit court's order.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Malm Law Firm*, by: *Jeffrey G. Malm*, for appellants.

No response.