

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–14–280

| | |
|---|---|
| RICKY TEAGUE and NIKI TEAGUE Husband and Wife | **Opinion Delivered** December 17, 2014 |
| APPELLANTS | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CV2012-132-2] |
| V. | HONORABLE DOUG MARTIN, JUDGE |
| JOE CANFIELD and ELSIE CANFIELD, Husband and Wife | AFFIRMED |
| APPELLEES | |

**BRANDON J. HARRISON, Judge**

This is a property-boundary case. Joe and Elsie Canfield filed a petition to quiet title that asked the circuit court to determine the common boundary between their property and property that Ricky and Niki Teague own. The Teagues counterclaimed and alleged that they own the disputed land area based upon boundary by acquiescence and adverse possession. The Teagues also claimed that they had an easement by prescription in an access road. After a bench trial, the circuit court found that the Canfields owned the disputed area of land and that the Teagues did not have an easement by prescription in the access road. The Teagues moved for a new trial pursuant to Rule 59(a)(6) of the Arkansas Rules of Civil Procedure. The court denied the motion. The



Teagues ask us to reverse the court's decision in favor of the Canfields. We decline to do so and affirm the circuit court.

I.

Two areas of property are in dispute—a "northeast corner triangle" and an "access road." The triangular section is a nearly two-acre area of land where the Canfield boundary juts up north from its normally straight easterly direction and forms a triangular shape as a result. An access road allowing the Teagues ingress and egress to a nearby county road is located in the triangular area. The northeast corner triangle has been a part of the Canfields' property since 1889 and has been excepted from the Teague title for the same period of time.

Around 1986, Ricky Teague began repairing a fence that would enclose his entire property. According to Joe Canfield's testimony at trial, the Teagues and Canfields understood that the fence would run "straighter so that it would be less expensive," and it would not "go around the northeast corner triangle." Teague used a bulldozer to clear a straight-line path across the base of the northeast corner triangle; then he enclosed the land with a fence. Joe Canfield insisted that a gate be installed in the new fence so he could access his property on the other side; the Teagues included a gate. At trial, the Canfields testified that they accessed the northeast corner triangle through the fence that the Teagues had installed and did so on numerous occasions. The Canfields also stated that they continued to brush hog the area, pick wild blackberries that grew there, and simply enjoy the triangular-shaped area for its habitat and wildlife.

2



In 2011, the Canfields had their property surveyed. The survey returned the same property descriptions that were contained in both parties' deeds. Joe Canfield intended to meet with the Teagues to talk about the survey results because he was concerned with his property rights over the northeast triangle. After a number of failed attempts to meet with Ricky Teague, Canfield filed the petition to quiet title that started this case and ended with title being quieted in the Canfields.

## II.

After the circuit court entered judgment on May 22, the Teagues moved for a new trial. The motion was filed on June 3, and the court denied the motion by written order on June 20. The Teagues also filed a motion to extend the time to file a notice of appeal, which the circuit court granted. The court ruled that that the Teagues could only appeal from the order denying the motion for new trial. Regarding the Teagues' challenge to the court's decision to deny their Rule 59 motion, when evaluating a motion for new trial filed under Rule 59(a)(6), the circuit court "must determine whether the verdict or decision is clearly contrary to the preponderance of the evidence. In examining that motion, the trial court is permitted to weigh the evidence. On appeal from the denial of [this] . . . motion[ ], the appellate court affirms the verdict if it is supported by substantial evidence." *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 739, 120 S.W.3d 61, 66–67 (2003) (internal citations omitted). Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty. *Depew v. Jackson*, 330 Ark. 733, 735, 957 S.W.2d 177, 178 (1997). In examining whether substantial evidence exists, the verdict is given "the benefit of all reasonable inferences

SLIP OPINION

permissible in accordance with the proof." *Id.*, 957 S.W.2d at 178. In reviewing a circuit court's findings of fact, we give due deference to the court's superior position to determine the credibility of witnesses and the weight their testimony should receive. *Dye v. Anderson Tully Co.*, 2011 Ark. App. 503, at 4, 385 S.W.3d 342, 345–46.

For the reasons discussed in more detail below, we affirm the circuit court's denial of the motion for new trial because the judgment is supported by substantial evidence.

III.

The parties disagree on whether this court has jurisdiction to review the denial of the motion for a new trial only, or whether it may also review the merits of the underlying judgment. The Canfields argue that the Teagues could only appeal from the denial of the Rule 59 motion and not the underlying judgment. The Teagues argue that they may appeal the denial of their motion and the underlying judgment. We agree with the Teagues. Arkansas Rules of Appellate Procedure—Civil 2(b) and 3(a) (2014) provide that "an appeal from an order disposing of a postjudgment motion under Rule 4(b)(1) brings up for review the judgment . . . as well as the order appealed from." We have jurisdiction to review the denial of the Rule 59(a)(6) motion and the judgment that led to that postjudgment motion. We now turn to the judgment.

A. Boundary by Acquiescence and the Northeast Triangle

The Teagues' counterclaim raised the issue of whether the Canfields had, by acquiescence, established the property boundary when the Teagues put up the fence in 1986. The gist of this claim is that after the Teagues enclosed the northeast corner triangle with the 1986 fence, the Canfields tacitly agreed to it functioning as the new boundary

4



between their properties. The circuit court heard the evidence for and against this claim and rejected the Teagues' argument.

We review quiet-title and boundary-line cases de novo. *Stadler v. Warren*, 2012 Ark. App. 65, 389 S.W.3d 5. We will not reverse findings of fact, however, unless they are clearly erroneous. A finding is clearly erroneous when an appellate court reviews the evidence and is left with a definite and firm conviction that a mistake has been made. *Acuna v. Watkins*, 2012 Ark. App. 564, 423 S.W.3d 670 (2012).

A boundary by acquiescence may arise when adjoining landowners tacitly accept a fence, or other monument, as the visible evidence of a property boundary and apparently consent to it. *Myers v. Yingling*, 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008). A boundary by acquiescence that is inferred from landowners' conduct over many years can imply the existence of an agreement about the location of the boundary line. *Id*. This boundary may exist without prior dispute. *Harris v. Robertson*, 306 Ark. 258, 813 S.W.2d 252 (1991). Neither the mere existence of a fence, nor one party's subjective belief that a fence is a boundary line will sustain a finding of acquiescence. An express recognition or agreement between the parties is not necessary. *Boyster v. Shoemake*, 101 Ark. App. 148, 152, 272 S.W.3d 139, 143 (2008). Tacit acceptance may suffice if a mutual recognition of the boundary line can be inferred from the parties' conduct over a period of years. *Thurkill v. Wood*, 2010 Ark. App. 319, at 3–4, 374 S.W.3d 790, 793.

The Teagues argue that the Canfields tacitly agreed that the boundary line between the families' property was the fence that was built in 1986 and that the circuit court clearly erred when it required that the boundary line be "accepted or recognized" by the

5



Canfields. The Teagues correctly state that an express acceptance of the boundary is unnecessary, but this point overlooks testimony that the circuit court was entitled to credit. Specifically, the circuit court credited Joe Canfield's testimony that his family never "accept[ed] this fence line as a visible evidence of their dividing line" and continued to use the property as owners, even though they were required to cross a fence to reach it. The circuit court expressly found that the Canfields' conduct did not imply the existence of any agreement, tacit or otherwise, that the 1986 fence line was a proper boundary line. The court's decision was not clearly erroneous, so we affirm.

B. Adverse Possession of the Northeast Triangle

The Teagues argue that the circuit court erred by ruling that they did not adversely possess the northeast corner property. We disagree.

Adverse possession is governed by common law and a statute—Arkansas Code Annotated section 18-11-106 (Supp. 2013). Under the common law, a party must prove that he or she continuously possessed the claimed property for more than seven years and that the possession was visible, notorious, distinct, exclusive, hostile, and maintained with the intent to hold it against the true owner. *Thompson v. Fischer*, 364 Ark. 380, 200 S.W.3d 622 (2005). Additional requirements were enacted by the General Assembly in 1995, but they do not concern us here given that the Teagues claim that they began adversely possessing part of the northeast corner triangle in 1986; this means an adverse-possession claim would have vested, if at all, before the additional statutory requirements were enacted. *Schrader v. Schrader*, 81 Ark. App. 343, 101 S.W.3d 873 (2003). So we, like the parties and the circuit court, will only apply the common law.



There was conflicting testimony at trial regarding how much control the Canfields exercised over the northeast corner. The circuit court credited the Canfields' testimony that they maintained control over the northeast corner, used the gate to access it, enjoyed its habitat for wildlife, and picked wild blackberries in the area. The circuit court could have found, at a minimum, that the Teagues failed to establish that they exercised exclusive control over the property as against the true owner or record title holder. *See Utley v. Ruff*, 255 Ark. 824, 826, 502 S.W.2d 629, 632 (1973). The circuit court did not clearly err when it rejected the Teagues' adverse-possession claim.

### C. Easement by Prescription and the Access Road

The Teagues argued at trial that they obtained an easement by prescription in the access road. We disagree.

"Use of property may ripen into an easement by prescription, even if the initial usage began permissively, if it is shown that the usage continued openly for the statutory period after the landowner knew that it was being used adversely, or under such circumstances that it would be presumed that the landowner knew it was adverse to his own interest." *Baysinger v. Biggers*, 100 Ark. App. 109, 111, 265 S.W.3d 144, 145 (2007). To establish an easement by prescription, the Teagues must establish an adverse use of a passageway, for a period of seven years, and under a claim of right. *Neyland v. Hunter*, 282 Ark. 323, 668 S.W.2d 530 (1984). A prescriptive-easement claim does not, however, require exclusive use. *Id.*

Here, the Teagues rely on *The Willows, LLC v. Bogy*, 2013 Ark. App. 59, where this court upheld the circuit court's finding of an easement by prescription. But this case

is materially different. This case turned on the court's credibility determinations, and we routinely defer "to the superior position of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony . . . [and] will not overturn the circuit court's credibility determination on appeal." *Id.* at 4. At trial, Joe Canfield testified that he gave Ricky Teague permission to use the access road shortly after the Teagues bought the property from the original owners. The circuit court credited Canfield's testimony and ultimately concluded that the Teagues, "having proved only that the use of the roadway had existed over long periods of time, failed to meet their burden of proving a right to a prescriptive easement." We hold that the court did not clearly err in rejecting the Teagues' prescriptive-easement claim.

Affirmed.

WALMSLEY and GRUBER, JJ., agree.

*Taylor Law Partners, LLP*, by: *Stevan E. Vowell*, for appellants.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield*, for appellees.