
SLIP OPINION

Cite as 2016 Ark. App. 120

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–610

| | |
|---|---|
| RICKY WHITECOTTON and DENENE WHITECOTTON<br><br>APPELLANTS<br><br>V.<br><br><br><br>ARLIS RAY OWEN and JEANNIE OWEN<br><br>APPELLEES | **Opinion Delivered** February 24, 2016<br><br>APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 42PCV–13–1]<br><br>HONORABLE TERRY SULLIVAN, JUDGE<br><br>AFFIRMED AND REMANDED WITH INSTRUCTIONS |

**PHILLIP T. WHITEAKER, Judge**

This appeal involves a boundary-line dispute between appellants Denene and Ricky Whitecotton and appellee Jeannie Owen.[1] Owen filed suit against the Whitecottons, seeking ownership of a disputed strip of land under the theories of boundary by acquiescence and adverse possession. The Logan County Circuit Court found that Owen had proved ownership of the disputed strip of land under both theories. The Whitecottons appeal, arguing that the circuit court erred in making its findings. We affirm.

We review boundary-line cases de novo. *Teague v. Canfield*, 2014 Ark. App. 712; *Stadler v. Warren*, 2012 Ark. App. 65, 389 S.W.3d 5. Because the location of a boundary is a disputed question of fact, we will affirm the circuit court's finding unless it is clearly against

---

[1] Appellee Arlis Owen passed away during the pendency of this case.

SLIP OPINION

the preponderance of the evidence. *Reynolds v. GFM, LLC*, 2013 Ark. App. 484, 429 S.W.3d 336. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite conviction that a mistake was committed. *Id.*

With these standards in mind, we examine the facts before the circuit court. Owen and the Whitecottons own property with a common boundary line that runs north to south between them. The Owen property is located on the west side of the common boundary, and the Whitecotton property lies to the east side. Between the two properties is a line of trees with remnants of an old fence running through it. The line of trees is not straight and is off the deed line, according to survey evidence. The strip of land to the east of the actual deed line and to the west of the line of trees is the property is in dispute.

Owen claimed ownership from the deed line to the disputed tree line. Numerous witnesses testified about the existence of an old fence that ran along the tree line. A survey conducted by James Higby confirmed remnants of an old, rusty wire fence along the ground that ran east of the actual deed line. Higby noted that the land had been mowed as close to the fence line as possible on the west side. He acknowledged that the line he surveyed in conjunction with the possession line did not match the deed line, but it did conform to the tree line and to the line where the property had been mowed. Higby concluded that, in his view, given the tree line, the remnants of the old barbed-wire fence, and the mowing, "that constitutes possession."

SLIP OPINION

Owen claimed possession and maintenance of the disputed property. In support of her claim, she presented evidence of her family's historical possession of the property. Their possession began sometime in the 1930s when Owen's grandfather claimed the land. Owen recalled her grandfather gardening in the disputed area between his house and the tree line until he passed away in 1989. This recollection was supported by her witnesses, who confirmed her family's gardening on the property and mowing the tract up to the fence line. The family's possession continued through the years. Owen's father owned the property from 1949 until he deeded it to Owen and her brother in 1991. Owen described family get–togethers on the land during this time. Numerous relatives and community members testified about the many family gatherings held on the property between the house and the fence line throughout the years. Owen introduced photographs from the 1950s of her family on the property. She also introduced current photos that showed that the tree line looked much the same at the time of trial as it did decades ago. Since taking ownership in 1991, she continued to plant vegetables and flowers on the property, continued to mow the property up to the fence line, put up T-posts to hang Christmas lights down the tree line in 1999, and continuously enjoyed the use of the property, including holding her daughter's wedding there in 2001.

Ricky Whitecotton refuted Owen's claim of ownership. The Whitecottons acquired a deed to their land in 2002 from individuals named Horne. Shortly after they bought the property, Whitecotton had an encounter with Owen. According to Whitecotton, Owen sought his permission to continue to mow the property. He also claimed that Owen's late

husband, Ray, asked for permission in 2002 to hang a bird feeder on a tree in the contested area and to put up T-posts for hanging Christmas lights. He said, however, that since he bought his property, he never saw anything happen on the disputed strip that would indicate that Owen was trying to claim it.

Robert Grisham, a surveyor hired by the Whitecottons, testified that he was on the property in 2013 when Owen came up to him and asked why he was setting T-posts on the east boundary line. Grisham said that Owen told him that she "knew where the line was and that the yard wasn't hers, but she kept it up many years and she said that she would like to keep it, that she would like to get it from Mr. Whitecotton." Grisham also stated that Owen said that she knew she did not own the property.

Owen testified in rebuttal, denying that she ever had a conversation with Whitecotton about asking permission to mow the disputed area. She also disputed that her husband would have had a conversation with Whitecotton about the bird feeder in 2002 because he was suffering from Parkinson's disease at the time. Owen further denied ever telling Grisham that she did not own the land, and she said that she never told him that she wanted to get the land away from Whitecotton.

The circuit court subsequently found that Owen and her predecessors in title had occupied and possessed the lands up to the fence line and the tree line since the 1930s. The court specifically found that Whitecotton was lacking in credibility when he testified that Owen and her husband asked permission to mow and put up the bird feeder and Christmas lights after he had moved onto the property; conversely, the court found Owen to be

credible when she testified that she and her husband had put up the T-posts for the Christmas lights prior to the Whitecottons' purchase of the land. The court therefore concluded that Owen had proved her ownership of the property both by adverse possession and by acquiescence, and it declared Owen to be the owner of all lands lying to the west of the fence as reflected on her survey. Following entry of judgment, the Whitecottons filed a timely notice of appeal.

In their first point on appeal, the Whitecottons contend that the circuit court erred in two respects in finding a boundary by acquiescence: first, that Owen did not plead the existence of a boundary by acquiescence; second, that the evidence did not support the circuit court's findings.

We summarily dispose of the Whitecottons' first argument regarding Owen's failure to plead acquiescence. Owen specifically pled in paragraph seven of her amended complaint that, "[a]djacent to the lands of the Plaintiffs, and to the east thereof, there exists a fence line which is and has been the accepted boundary between the lands of the Plaintiffs and the lands of the Defendants and their predecessors for more than sixty years." This argument is lacking in merit.

The Whitecottons' second argument is that the evidence did not demonstrate the existence of a boundary by acquiescence. A boundary by acquiescence is formed when adjoining landowners accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line. *Myers v. Yingling*, 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008); *Stadler, supra.* This court has repeatedly held that a fence, by

acquiescence, may become the accepted boundary even though it is contrary to the survey line. *See Stacy v. Dixon*, 2014 Ark. App. 314; *Reynolds*, *supra*; *Strother v. Mitchell*, 2011 Ark. App. 224, 382 S.W.3d 741.

The Whitecottons argue that the evidence does not support the acceptance of, or consent to, the tree line as the dividing line between the parties' land. They further argue that there is no evidence that their predecessors in title, the Hornes, accepted or consented to the tree line as the boundary line. Although neither the mere existence of a fence nor one party's subjective belief that a fence is the boundary line will sustain a finding of acquiescence, express recognition or agreement between the parties is not necessary. *Stadler*, *supra*; *Boyster v. Shoemake*, 101 Ark. App. 148, 272 S.W.3d 139 (2008). Tacit acceptance will suffice, and silent acquiescence is sufficient when mutual recognition of the boundary line can be inferred from the conduct of the parties over a period of years. *Thurlkill v. Wood*, 2010 Ark. App. 319, 374 S.W.3d 790. We have made clear that it is the agreement and acquiescence, not the fence itself, that controls. *Reynolds*, *supra*. The intention of the parties and the significance they attach to the fence, rather than its location or condition, is what is to be considered. *Id*. Moreover, neither a prior dispute about the boundary line nor an adverse usage up to a fence is required to establish a boundary by acquiescence. *Id*. A boundary line by acquiescence is inferred from the landowners' conduct over many years implying the existence of an agreement about the location of the boundary line; in such circumstances, the adjoining owners and their grantees are precluded from claiming that the

6

boundary so recognized and acquiesced in is not the true one, although it may not be. *Stadler, supra.*

Whether a boundary line by acquiescence exists is to be determined from the evidence in each case. *Stacy, supra.* It is the duty of the trial court to weigh the evidence and the credibility of the witnesses in each case. *See Young v. Robertson,* 2015 Ark. App. 681, ___ S.W.3d ___. This is exactly what the trial court did here. The circuit court specifically found credible the testimony that the fence line is the boundary line. In particular, the court found credible the testimony of Owen's ninety-four-year-old aunt, who reported familiarity with the property since the 1930s. Owen's aunt recalled her father gardening and mowing on the property up the fence line, and she said that no one ever told him not to mow it. She stated that there had never been any dispute about who owned the land between the house and the fence, as far as she knew. While the Whitecottons complain that Owen's "credibility is highly suspect," we give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Stadler, supra*; *Robertson v. Lees,* 87 Ark. App. 172, 189 S.W.3d 463 (2004). As such, this argument does not present a basis for reversal.

The Whitecottons also argue, in a separate point on appeal, that the circuit court erred in finding that Owen had proved the boundary line by adverse possession. In *Stadler,* this court held that the circuit court did not clearly err in finding a boundary by acquiescence. 2012 Ark. App. 65, at 8, 389 S.W.3d at 10. It therefore concluded that it "need not

determine whether appellees adversely possessed the property." *Id*. It is likewise unnecessary to do so in this case.

In their final point on appeal, the Whitecottons argue that the circuit court erred in excluding testimony they attempted to offer in order to "impeach [Owen] on her attitude toward ownership of the land she sought." At trial, the Whitecottons asked Owen if she would be willing to acknowledge that she had a conversation with Ricky Whitecotton in which she asked him if he would be willing to enter a property-line agreement. Owen objected, arguing that such testimony went to settlement negotiations. The circuit court sustained the objection.

On appeal, the Whitecottons argue that this testimony was admissible pursuant to "the exception built into Arkansas Rule of Evidence 408" to show Owen's state of mind concerning the location of the property line and her ownership of the property. Rule 408 provides as follows:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Ark. R. Evid. 408 (2015). A circuit court's decision regarding exclusion of evidence under Rule 408 will not be reversed absent a manifest abuse of that discretion. *McKenzie v. Tom Gibson Ford, Inc.*, 295 Ark. 326, 333, 749 S.W.2d 653, 657 (1988). In order to invoke the

exclusionary rule, an actual dispute must exist, and there must be at least an apparent difference of view between the parties as to the validity or amount of the claim. *Wal-Mart Stores, Inc. v. Londagin*, 344 Ark. 26, 33, 37 S.W.3d 620, 624 (2001) (citing John W. Strong, *McCormick on Evidence* § 266, at 183 (5th ed. 1999)).

The Whitecottons wished to introduce a portion of Owen's deposition in which she was asked if she had ever asked Ricky Whitecotton if he would be willing to enter a property-line agreement; she responded that he "was supposed to get that drawn up and get us to sign it." This clearly evidences the existence of an actual dispute and a difference of view between the parties as to the validity of the claim. We are unable to say that the circuit court abused its discretion in excluding this evidence.

We therefore affirm the circuit court's final decree. However, we remand with instructions for the circuit court to amend its order to include a specific legal description of the boundary at issue. *See Chiodini v. Lock*, 2010 Ark. App. 340, 374 S.W.3d 835; *Garringer v. Garringer*, 2010 Ark. App. 297, 374 S.W.3d 769. Here, the court's judgment references "Exhibit A" and "Exhibit B," which are documents that set forth the legal descriptions of the Owen and Whitecotton properties, and it concludes that Owen is the owner of "all lands lying to the West of the fence reflected as Line B-1 on Plaintiff's Exhibit No. 8."[2] The order itself, however, must describe the boundary with sufficient specificity that it can be identified solely by reference to the decree. *Boyster*, *supra*; *Adams v. Atkins*, 97 Ark. App. 328, 249 S.W.3d 166 (2007).

---

[2] Plaintiff's Exhibit 8 is a copy of the survey prepared by Higby.

SLIP OPINION



Affirmed and remanded with instructions.

GRUBER and HOOFMAN, JJ., agree.

*Jon R. Sanford, P.A.*, by: *Jon R. Sanford*, for appellants.

*Barham Law Office, P.A.*, by: *R. Kevin Barham*, for appellee.