Cite as 2020 Ark. App. 425

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-19-813

| | |
|---|---|
| | Opinion Delivered September 23, 2020 |
| SHAWN SMITH AND THE FOLLOWING LANDS LOCATED IN NEWTON COUNTY, ARKANSAS TO WIT: ALL THAT PART OF THE SE/SW IN SECTION 10, TOWNSHIP 16 NORTH, RANGE 20 WEST, LYING NORTH OF THE EXISTING FENCE <br> APPELLANTS | APPEAL FROM THE NEWTON COUNTY CIRCUIT COURT [NO. 51CV-16-47] <br><br><br> HONORABLE GORDON WEBB, JUDGE |
| V. | |
| ARNOLD AND RACHEL BOWSER, HUSBAND AND WIFE <br> APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Shawn Smith appeals the Newton County Circuit Court's order quieting title to certain property in favor of Rachel and Arnold Bowser. Smith argues that the Bowsers failed to prove either adverse possession or boundary by acquiescence, so the circuit court's decision should be reversed. We affirm.

In August 1995, the Bowsers purchased a parcel of real property in Newton County. The Bowsers understood that the property included a five-acre section described as "All that part of the Southeast Quarter of the Southwest Quarter in Section 10, Township 16 North, Range 20 West lying North of the existing fence." The Bowsers believed that the existing fence was the southern boundary line for their property. This five-acre section is

the subject of this dispute and will be referred to as the Wind Tunnel Cave (WTC) property or "the property."

In December 2016, the Bowsers petitioned to quiet title in the WTC property, asserting that since 1995 they had furnished all maintenance and made improvements to the property up to the location of the existing fence, that their adverse possession of the property had been continuous and visible, and that alternatively, the fence was represented as the boundary line of their property at the time of purchase, and "Respondents never challenged the Petitioners' possession and have accepted the old fence as the boundary line." The Bowsers named Roberta Wilson and Cynthia Wagy as respondents; Smith was later substituted as the proper party of interest.

The circuit court conducted a bench trial in May 2019. Arnold Bowser testified that he and his sons had visited the property that includes the WTC and explored the cave before buying the property. Bowser's realtor, Edd French, later told Bowser that the property was for sale. Bowser said he had been interested in the property—not just because of the cave— but also because it had a spring, a garden site, an old cabin, and potential electric and phone connections. He explained that French had made him aware of the existing fence, which Bowser believed to be the southern border of the property, and that he has possessed the property since 1995.

Bowser stated that upon taking possession, he and his family immediately began cleaning up the property and opened a second entrance to the cave. He also explained that for approximately the last twenty years, his family had held yearly "cave singings" with the residents of a local nursing home. Bowser identified other improvements made to the

property such as a fenced-in area for part of the garden, a new top for the spring box, and a bush-hogged pasture for use as a parking area. He reiterated that since 1995, he had relied on the old fence as the southern boundary of his property. Bowser identified Mark Wilson as the long-time owner of the property to the south and agreed that Wilson had never claimed that he (Bowser) was on Wilson's property. Bowser explained that he filed the quiet-title action after a neighbor alerted him to "red streamers" on his property indicating that a survey had been done.

On cross-examination, Bowser confirmed that as far as he knew this was the first time since he took possession of the property more than twenty years ago that a survey had been done involving the southern boundary line. He stated that the property was not surveyed when he purchased it and that he believed the fence had always been the southern boundary line for the property. Bowser also said that the electricity on the property had not been connected to the old cabin but that, in addition to the cave, his family had made other improvements such as hauling away junk and bush-hogging a portion of the property. When asked by the court, Bowser testified that there were two roads entering his property on the northern boundary, but he was not aware of any roads entering his property south of the fence line.

The Bowsers also submitted to the court an affidavit of testimony by Edd French, in which he stated:

> I obtained the listing for the Wind Tunnel Cave and the NE/SW Quarter of Section 10, Township 16 North, Range 20 West in Newton County, Arkansas. To advertise the property, I included the cave tract in my advertising brochure (see Exhibit attached). I provided a description of the property to the printer, making sure that I described the important features of

3

the property which included the cave, stream, spring, cabin and garden site. I had been familiar with the cave property since the late 1980's.

In the summer of 1995, I showed the property to Arnold Bowser who subsequently purchased the property in August 1995. I recall looking for boundary markers and found sections of an old fence as depicted in the survey by Tyler and Harris. . . . I also showed Mr. Bowser the cave entrance, the cabin, building foundation, the spring and stream, and an old orchard on the subject property. Mr. Bowser was particularly interested in the cave. Subsequent to Mr. Bowser's purchase of the property, I have revisited the property to see the improvements that Mr. Bowser and his family have made. On one occasion I entered the cave with Mr. Bowser to see the work done to make access easier.

Smith testified that he had bought and sold property in the past, and after becoming aware that the WTC property was for sale, he had the property surveyed. According to Smith, he then received a phone call from Bowser in which he said that Smith could not buy the property because he (Bowser) was going to buy the property. Smith agreed that Newton County tax records from 1997 to the present showed that Mark Wilson had paid the taxes on the property until Smith purchased the property. Smith also said that the property had not been cleared of junk or cleaned up until after this suit had been initiated. He agreed that in late 2016, when he had the property surveyed, there had been no indication that someone was maintaining and claiming this property.

On cross-examination, Smith said that he learned the property was for sale through a real-estate listing but that the listing did not mention the cave. Smith testified he had been unaware the cave existed until 2016 and had not been aware of the Bowsers' use of the cave since the mid-1990s. Smith also said that he did not believe Bowser's testimony about improvements he and his family had made to the property. Smith clarified that he acquired Wilson's property through two deeds, a warranty deed for the majority of the property and

4

a quitclaim deed for the piece of property in question, explaining, "[T]he title company had to do it that way because Mr. Bowser had filed the lawsuit against the Wilson's, so they could—they couldn't give me a Warranty Deed, they only could give me a Quitclaim deed until the lawsuit was settled." He acknowledged that the quitclaim deed showed a purchase price of zero dollars. Smith had not made any improvements to the disputed property.

Anthony Taylor testified that he had conducted a property survey for Smith and documented the existing fence line, which he said was "down in a lot of places." He also noted a "dilapidated" cabin and a poorly maintained wire fence around a garden area. He testified that he did not observe any improvements to the entrance of the cave but may have seen a small plaque showing the name of the cave. He reiterated that the fence line had not been maintained. Taylor also explained, however, that the fence line was close to the southern boundary indicated in an older survey from 1971. On cross-examination, Taylor verified that he had prepared the legal land descriptions for Smith's deeds, and he agreed that "if we use the description for the 5.74 acres, that is the yellow portion of the survey that's disputed, then the Court would be right and entitled to use that description because you think it is still good."

On 22 July 2019, the circuit court entered a written order finding that the Bowsers "have established by a preponderance of the evidence that they are the lawful owners of, and are hereby vested in title to, the Newton County lands described in the exhibit page attached hereto." Smith has appealed this order.

Boundary-line cases are reviewed de novo. *Durham v. McCone*, 2018 Ark. App. 392, 555 S.W.3d 907. This court will not reverse findings of fact unless they are clearly

erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Id.* Because the location of a boundary is a disputed question of fact, we will affirm the circuit court's finding unless it is clearly against the preponderance of the evidence. *Id.* In reviewing a circuit court's findings of fact, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.* The circuit court did not specify the basis for its ruling, so the parties have argued both bases pled by the Bowsers in their petition—adverse possession and boundary by acquiescence.

## I. *Adverse Possession*

To prove ownership of land by adverse possession, the party claiming possession must show continuous possession of the property for seven years. *Robertson v. Lees*, 87 Ark. App. 172, 189 S.W.3d 463 (2004). The claimant must also prove that possession was actual, open, continuous, hostile, exclusive, and accompanied by an intent to hold against the true owner. *Washington v. Washington*, 2013 Ark. App. 54, 425 S.W.3d 858.

Smith first argues that the Bowsers failed to prove adverse possession of the property. In response, the Bowsers contend that the court's ruling is supported by a finding of boundary by acquiescence and do not address the adverse-possession argument. Smith asserts that this concession requires a reversal and new trial, because without knowing the basis for the circuit court's ruling, it might have made a finding of adverse possession, which the Bowsers have now conceded was not proven. We disagree with Smith's interpretation of the law on this point. This court can affirm the circuit court's decision for any reason

6

that the record supports, so long as it is correct. *Alexander v. Chapman*, 299 Ark. 126, 771 S.W.2d 744 (1989).

## II. *Boundary by Acquiescence*

A boundary line by acquiescence is inferred from the conduct of the landowners over many years that implies the existence of an agreement about the location of the boundary line; in such circumstances, the adjoining landowners and their grantees are precluded from claiming that the boundary so recognized and acquiesced in is not the true one, although it may not be. *Clark v. Caughron*, 2017 Ark. App. 409, 526 S.W.3d 867. A boundary by acquiescence is usually represented by a fence, a turnrow, a lane, a ditch, or some other monument tacitly accepted as visible evidence of a dividing line. *Brown v. Stephens*, 2009 Ark. App. 614. This court has repeatedly held that a fence, by acquiescence, may become the accepted boundary even though it is contrary to the survey line. *See, e.g.*, *Stacy v. Dixon*, 2014 Ark. App. 314; *Reynolds v. GFM, LLC*, 2013 Ark. App. 484, 429 S.W.3d 336; *Strother v. Mitchell*, 2011 Ark. App. 224, 382 S.W.3d 741.

Smith argues that the Bowsers presented no proof of a tacit agreement between them and the adjoining landowner that the fence was the recognized southern boundary of the Bowsers' property. Smith claims, "The extent of the Bowsers' evidence was [that] Mr. Bowser thought he was buying property to that fence." He contends that there was no proof that Mark Wilson, his predecessor in interest, considered the fence the northern boundary to his property, and that the Bowsers had done nothing on the WTC property to put adjoining landowners on notice.

The Bowsers respond that Smith has mischaracterized the proof as merely a claim by Bowser that he "thought he was buying property to that fence." They submit the following evidence also supports a finding of boundary by acquiescence: (1) the Bowsers have held the property north of the fence since 1995, the fence was already present when the property was purchased, and French identified the fence as the property line to the Bowsers and in advertising the property; (2) the fence runs south of private roads that originate and pass through the northern property and that connect to the WTC property; (3) the Bowsers used and improved the WTC property for twenty-four years without challenge by Wilson, the owner of the southern property; (4) Smith's own surveyor, Taylor, testified that the fence line tracks the prior understood survey line along the edge of the two properties. In reply, Smith insists that without proof that Wilson considered the fence the northern boundary of his property, the Bowsers cannot establish boundary by acquiescence.

Smith is essentially arguing that the Bowsers must present affirmative evidence of Wilson's understanding of the property line in order to prevail. However, our court has previously addressed this argument and held otherwise. In *Whitecotton v. Owen*, 2016 Ark. App. 120, at 6, 487 S.W.3d 380, 384, we stated:

> Although neither the mere existence of a fence nor one party's subjective belief that a fence is the boundary line will sustain a finding of acquiescence, express recognition or agreement between the parties is not necessary. *Stadler, supra*; *Boyster v. Shoemake*, 101 Ark. App. 148, 272 S.W.3d 139 (2008). Tacit acceptance will suffice, and silent acquiescence is sufficient when mutual recognition of the boundary line can be inferred from the conduct of the parties over a period of years. *Thurlkill v. Wood*, 2010 Ark. App. 319, 374 S.W.3d 790.

Accordingly, we hold that Bowser's testimony that he maintained, improved, and used the WTC property for twenty-four years without any objection from Wilson is

8

substantial evidence of a tacit agreement that the fence line reflected the boundary between the two properties. A finding of boundary by acquiescence is not clearly against the preponderance of the evidence presented in this case; therefore, we affirm.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Watson Law Firm of Harrison*, by: *Rick Watson*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Jeremy B. Lowrey*, for appellees.