Cite as 2025 Ark. App. 336

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-23-686

|  |  |
|---|---|
| CYNTHIA N. WHITE, PAUL R. WHITE, JENNIFER L. BARBER, TYLER R. WHITE, ASHLEY D. HOUGH, AND CHELSEA R. WHITE | Opinion Delivered May 28, 2025 |
|  | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66GCV-21-150] |
| APPELLANTS |  |
| V. |  |
| SUSAN R. RANDOLPH; TIMOTHY L. RANDOLPH, SR.; AND HARLEIGH MCKEY | HONORABLE DIANNA HEWITT LADD, JUDGE |
| APPELLEES | AFFIRMED |

**CASEY R. TUCKER, Judge**

Cynthia N. White, Paul R. White, Jennifer L. Barber, Tyler R. White, Ashley D. Hough, and Chelsea R. White (collectively "Appellants") appeal the July 17, 2023 order of the Sebastian County Circuit Court that found in favor of Susan R. Randolph; Timothy L. Randolph, Sr.; and Harleigh McKey (collectively "Appellees") with respect to the following: (1) the record ownership of certain property; (2) the determination that Appellants failed to prove either ownership by adverse possession or boundary by acquisition; and (3) the award of damages for trespass and ejectment to Appellees. We affirm.

I. *Facts and History Before Litigation*

This is a boundary–line dispute in which both parties claim ownership of a strip of land that is approximately twenty-five feet wide. It all began with Margaret and W.J. Oliver, the deceased grandparents of appellee Susan Randolph and appellant Cynthia White, who owned certain property in Sebastian County, Arkansas (the "Oliver Property"). In the late 1960s, the Olivers built a fence running east to west on their property. Twenty-four to twenty-five feet north of the fence is the disputed property (the "Disputed Property"). In May 1978, Margaret Oliver (W.J.'s surviving widow) deeded the southern part of the Oliver Property to appellee Susan Randolph's parents, W.L. Chronister and Ina Chronister (the "Randolph Property") and deeded the northern part of the Oliver Property to appellant Cynthia White's mother, Patsy Steele (the "White Property"). Appellees' amended complaint against Appellants asserted claims for trespass to, and ejectment from, the Disputed Property.

Appellee Susan Randolph (whose husband is Timothy Randolph) received a fiduciary's deed from the estate of her deceased father, W.L. Chronister, to two parcels of the Randolph Property on June 19, 2020. Appellee Harleigh McKey, Susan Randolph's daughter, also received a fiduciary's deed from the estate of Mr. Chronister to a parcel of the Randolph Property on the same day.

Appellant Cynthia White received a warranty deed to the White Property from her mother, Patsy Steele (who retained a life estate), on April 19, 2016. Ms. Steele died in June 2020; accordingly, appellant Cynthia White became the sole owner.

On January 20, 2021, appellant Cynthia White executed and filed a quitclaim deed concerning the White Property to herself; her husband, Paul White; and other family members who are also named Appellants in the lawsuit. Appellees and Appellants recorded deeds that describe adjoining/abutting properties, but all properties mentioned herein were previously owned in their entirety by the Olivers.

On August 12, 2020, Appellees directed their attorney Paul Post to send a letter to Appellants demanding that they remove a storage building and fence from the Disputed Property, or their failure to do so would result in litigation. The Whites did not comply with the request, and accordingly, on August 9, 2021, Appellees filed suit against Appellants.

II. *Litigation*

A. Pretrial Pleadings and Hearing

As reflected in Appellees' complaint,[1] Appellees sued Appellants for trespass and ejectment from the Disputed Property pursuant to Arkansas Code Annotated sections 18-60-201 et seq. (Repl. 2015).[2] In paragraph 7 of their amended answer, Appellants asserted

---

[1]Attached to the complaint as exhibits were the fiduciary deed conveying two tracts of property to appellee Susan Randolph and a scrivener's error affidavit; and the fiduciary deed to Harleigh McKey and a scrivener's error affidavit.

[2]Under Ark. Code Ann. § 18-60-201, "the action of ejectment may be maintained in all cases in which the plaintiff is legally entitled to the possession of the premises." For a plaintiff to recover for ejectment, "it shall be sufficient for him or her to show that, at the time of the commencement of the action, the defendant was in possession of the premises and that the plaintiff had title thereto, or had the right to the possession thereof as is declared by §§ 18-60-201 and 18-60-202." Ark. Code Ann. § 18-60-206.

3

that the purported property lines reflected in an August 30, 2021 survey done by Jim Higby ("Higby") of Cornerstone Surveying showed that they are the record legal owners of the Disputed Property; that the survey is "based" on the legal description stated in the January 20, 2021 quitclaim deed executed by appellant Cynthia White; and that the property lines shown in that survey are "consistent" with the property lines described in their 2021 quitclaim deed.[3] In paragraph 8 of the amended answer, Appellants asserted that they have legal title to the property as set out in the survey, which included the Disputed Property.[4] However, Higby's survey contains a disclaimer: "Title Research Note: In addition to the initial documents received by the client, or their representative, *only limited deed research was performed by this company during this survey. Therefore, please have a reputable title company confirm the surveyed property and the acreage shown.*" (Emphasis added.)

Appellees filed a motion to strike portions of Appellants' amended answer—specifically, portions of paragraphs 7 and 8—as being, among other alleged inaccuracies, "an assertion that the [Appellants] have conflicting or competing record legal title (i.e. prima facie evidence of title) to all of the real property described in their survey (Exhibit "B"), resting upon the blatantly false assertion that the survey (which is dated 21 days after the filing of the lawsuit) is 'based on legal description attached to the survey.'" In addition, Appellees sought the assistance of Waco Title of Fort Smith and its lead title examiner, Opal

---

[3]The quitclaim deed was attached as an exhibit to the Appellants' answer.

[4]The document titled "Survey for Cindy White" was attached as an exhibit.

Hilderbrand ("Hilderbrand"), to examine and compare the Higby survey and all the various deeds involved in the lawsuit.

By letter dated January 4, 2022, Appellees' attorney informed the circuit court and opposing counsel that Hilderbrand would be called as a witness at the hearing on their motion to strike. At the February 10 motion-to-strike hearing, Hilderbrand testified that she had twenty-three years' experience in the title industry. She reviewed each of the five legal descriptions—including Appellees' recorded deeds and scrivener's error affidavit legal descriptions; Appellants' quitclaim deed; and the August 30, 2021 Higby "Survey for Cynthia White" legal description. She input each of them into an industry-standard title computer program called Deed Plotter, and it created a precise platting/drawing that illustrated where each of the five legal descriptions are located. Hilderbrand found that there is not any conflict or overlapping of Appellees' and Appellants' record legal descriptions. She also found that the Higby survey legal description is not the same as, nor is it consistent with, Appellants' quitclaim deed description. Appellants' counsel, David Gean, participated in that hearing by cross-examining Hilderbrand. Appellants' surveyor, Higby, did not appear.

The court granted Appellees' motion to strike by order entered on March 3. But the court did not preclude Appellants from "presentation of evidence relating to or in support of the stricken provisions" at trial if Appellants were later "able to establish valid, admissible evidence which substantiates the stricken provisions of their answer."

B. The Trial

Gean withdrew as Appellants' attorney on December 20, 2022. Attorney Phillip Milligan entered an appearance by filing another amended answer on behalf of Appellants on January 11, 2023. Appellees' attorney stated in their pretrial brief filed February 17 that Appellees intended to use Hilderbrand's sworn testimony from the motion hearing at trial. Her name and her employer's name and address had previously been made known to Appellants. Appellees had taken Higby's deposition before trial. In response, Milligan filed a motion for continuance due to Higby's unavailability for trial and a "*Daubert*" motion as to Hilderbrand's testimony[5] on March 1. The court denied the motion to continue by opinion letter dated March 3 and took up the *Daubert* motion on the eve of trial.

At the trial on March 6, Appellants were permitted to introduce a complete copy of Higby's May 31, 2022 deposition transcript because he was not present. Mr. Milligan challenged the introduction of Hilderbrand's sworn testimony because (1) it was not proper if she was being offered as an expert, and (2) Appellants were now unable to cross-examine her.

The following exchange reflects the record of objections and the court's ruling:

MR. MILLIGAN:    I heard that Ms. Hilderbrand's not going to be here. I heard that he intends on introducing her prior sworn testimony at a Motion Hearing. That's not trial. It's not—that testimony is not for trial purposes. It was merely a witness that he called at that motion's hearing on a very specific issue of a Motion to strike paragraphs of a pleading. I didn't hear, in all of that response, as to whether the testimony is going to be proposed as expert

_____

[5]Appellants alleged Hilderbrand was not qualified, fit, or reliable to give expert opinions about property boundaries or disputes. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

testimony or as lay opinion testimony. So, I need to know that, because that's going to determine how I respond to this. And I didn't hear that. I heard, you know, of course, she's a Title Examiner. I understand that. I've read her testimony. I heard that she's, you know, she plugged it into some software and came out with this diagram. The question is, is her testimony— first off, is it going to be admissible to just submit as her trial testimony? I'm going to object to that, because I think if it was deposition testimony, subject to cross, you can do that, but I'm not aware of any Rule of Civil Procedure, or evidence, Your Honor, that he can say, well, this is prior sworn testimony at a Motion's Hearing, so therefore, I'm proffering that as her testimony at trial. Again, deposition is different if they're unavailable. There's no—there's no finding that she's unavailable. So, I'll address that at the time that he proposes it. At this time, I just simply need to know is she a 701 witness or a 702 witness. It's that simple.

MR. COWAN:      Your Honor, it really doesn't matter. Her opinion testimony, to the extent she gave the opinion testimony, was that it would be admissible either as a lay witness or an expert, but the point is that was a hearing before this Court. It was sworn testimony subject to cross examination. Mr. Higby had his chance to be here and testify if he wanted to. He chose not to, and the fact is, the bottom line, by virtue of the Court's Order that was entered upon that Motion Hearing, is now law of the case. And they're barred, by virtue of that Order, from trying to insinuate that Mr. Higby's survey description is the same as or consistent, as he put it, with their Record Deed Description. And I see that they have nothing here today that could go beyond that Order.

. . . .

THE COURT:      That hearing was for such a limited purpose. Really, to strike the allegations that the Survey and the Quitclaim Deed were consistent. I think the Daubert Motion, I don't know what all you might try to use her transcript testimony for. I think we probably have to wait to see what is going to be introduced before I can actually make a ruling on that Motion.

MR. MILLIGAN:      I don't disagree with that, Your Honor.

7

. . . .

THE COURT:    That hearing was for such a limited purpose. Really, to strike the allegations that the Survey and the Quitclaim Deed were consistent. I think the Daubert Motion, I don't know what all you might try to use her transcript testimony for. I think we probably have to wait to see what is going to be introduced before I can actually make a ruling on that Motion.

. . . .

MR. COWAN:    Well, sure. That – Rule 32, by definition, is limited to depositions. That talks only about depositions. It doesn't refer to court testimony, but I've never encountered a situation ever at trial before where you could not use a Court Reporter's transcript of a witness's testimony at a court hearing who was subject to cross-examination as an exhibit at trial. I mean, I think it's got all the built-in things that you use as safeguards to ensure that the testimony was trustworthy and reliable and subject to cross-examination. So, for that limited purpose –

THE COURT:    But subject to cross-examination for the purpose which was before the Court then, which was just a simple Motion's Hearing.

. . . .

THE COURT:    I think we're going to have to, to figure out what exactly is the proposition for which each side is trying to admit the transcripts.

. . . .

MR. COWAN:    I had also intended to introduce the aforementioned transcript of the Motion Hearing and exhibits there, too, as Exhibit 12 and as Exhibit 13, a separate copy of the platting drawing that was introduced at that Motion Hearing as Plaintiff's Exhibit 7 at the Motion Hearing, if the Court will allow us to introduce those at this time.

THE COURT:        All right. Mr. Milligan?

. . . .

MR. COWAN:        Well, 12 is a transcript of the February hearing.

MR. MILLIGAN:     Okay. 12 is the transcript.

THE COURT:        Okay. I've got it. . . .

MR. MILLIGAN:     But—and then, 12, absolutely is—if he's trying to introduce this now, then again, I need to know—because this—the transcript is not admissible, Your Honor, as evidence.

MR. COWAN:        It most certainly is, Your Honor.

MR. MILLIGAN:     Not as evidence. . . .

. . . .

THE COURT:        And did you say ~ what was 13, again?

MR. COWAN:        13 is just a separate copy of the ~ Ms. Hilderbrand's platting or planning and drawing, which is attached to the transcript as Exhibit 7.

THE COURT:        Okay. All right. Then yes, I'll ~ Court Reporter, make note that 12 and 13 were proffered.

. . . .

THE COURT:        Okay. Got it. So here's 12 and 13. I'm going to give those back to you until you admit those.

Appellees proceeded with testimony and called appellee Susan Randolph, who testified that she lives off Elderberry Lane, which is right off Bugscuffle Road where Appellants reside. In the late 1960s, her grandfather, Mr. Oliver, built the fence that ran east to west through the property to keep the animals out of the yard. It was never meant to serve

9

as a property or boundary line. The fence was still standing when the property was divided and deeded in 1978 to Susan Randolph's and Cynthia White's parents. On the north side of the fence is the Appellants' property, which included a storm shelter that was built in the 1960s.[6] In 2016, most of the fence was removed and remained down for several years, leaving a line of trees that had grown up in its place. Susan testified that in 2019, Appellants erected a new fence[7] "another three feet further over on [her] property than what it had been." The Whites then placed a storage building onto the Disputed Property. Susan further testified she never saw Patsy Steele (Cindy White's mother) claim ownership of property up to the fence line or any tree line that may have been planted or beyond what was deeded to her. According to Susan, in December 2019, Appellants caused survey "markers over on the [Whites'] side of the property" to be placed twenty-four to twenty-five feet from the fence line into the northern side of Appellees' properties. She sought ten dollars a day as a reasonable rental value of the land[8] from August 12, 2020, when the Whites were asked to vacate.

Appellee Tim Randolph testified that he has bushhogged both sides of the property over the years. He has no knowledge of Patsy Steele ever making any claim to adversely own

---

[6]The door of the storm shelter is on the north side of the fence (White Property) but the remainder of the building is on the south side of the fence (Randolph Property).

[7]The new fence consists of T–posts and wire.

[8]Susan claimed the land could be used for animal or vehicle storage or to bale hay from the meadow.

the property up to the fence or tree line. Tim stated that there was never an agreement that the new T-post fence line was the boundary between the two properties.

At this point in the case, the following exchange occurred between counsel and the court:

MR. COWAN: That's all I was going to call on their case, but before I rest, Your Honor, I want to renew my request for admission of Plaintiff's Exhibit 12, the Court Reporter's transcript of the previous hearing held on February 10, 2022. I think it's admissible, absolutely admissible and just because Mr. Milligan recently got into the case does not make it inadmissible, despite his protestations.

THE COURT: For what purpose are you wanting to introduce it?

MR. COWAN: Well, again, it goes to the issue of the legal descriptions and how they match up, and that was testified to, subject to cross-examination. The Court ruled favorably based upon that, granted the Motion, and that's become law of the case.

MR. MILLIGAN: First off, there's no such thing as law of the case as a result of a Motion Hearing, Your Honor. That has nothing to do with it. That wasn't a dispositive hearing by the Court as the trier of fact. As the Court said, it's a very specific. One thing I agree is my inclusion in the case has nothing to do with the admissibility or otherwise. It's either admissible or it isn't, and the problem is it's not. It's not admissible as her testimony, because it's not a deposition. It could be used for impeachment if she testified, and there's no question about that, but in and of itself, it's not admissible. It's just ~ it's a proceeding before the Court on a very specific issue before any discovery. She wasn't tendered as an expert at the time. I'm still not clear whether she's being tendered as an expert or just as a lay person witness. I think I heard Mr. Cowan finally say, for purposes of the Daubert issue, that he would tender her as a 701, which is a lay person opinion, and that does make a difference in my objection, because if it's tendered as an expert opinion, it's absolutely invalid. You can't bring it in when she wasn't qualified as an expert. If she is just a

11

lay person opinion at that time, and that was what they deemed they needed for purposes of the very limited purpose of their Motion. But there's no Rule of Evidence, Rule of Civil Procedure, or otherwise that said her testimony in Court as a witness they called in a very specific Motion Hearing is absolutely admissible as her testimony today.

MR. COWAN: Your Honor, I disagree with all of that, and for Mr. Milligan to stand there and say that a witness testifying before the Court, sworn and subject to cross-examination, permitted by the Court to testify to those matters is less admissible than a deposition transcript is absurd. Mr. Gean represented the Defendants at that time. He had the right to cross-examine Ms. Hilderbrand. The Court permitted that line of testimony. That testimony was substantively brought before the Court and admitted. Mr. Milligan has shown nothing whatsoever that would indicate that a transcript of a court hearing, sworn testimony subject to cross-examination by an attorney representing these very same parties is inadmissible.

MR. MILLIGAN: I do think, Your Honor, it's very important for this record to reflect in what capacity he's asking for it to be admitted.

THE COURT: I do need to know what capacity you're asking that it be. I've heard you say that you were offering it to show that the survey and the Deed are consistent. Correct?

MR. COWAN: No. Not consistent. Not – because it's their position that the survey and the Deed are the same. That's why we had to do this in the first place and they are not consistent. That was Ms. Hilderbrand's testimony when she platted out in the --

THE COURT: But that's the proposition. And that is the ultimate issue before the Court that you're wanting to show acceptance.

MR. COWAN: Well, the Court accepted that at the hearing and accepted the --

THE COURT: For a Motion to Strike, but not on the conclusive --

12

MR. COWAN: Well, but accepted these into evidence at that time. Again, it was all subject to cross-examination and the Court admitted all these exhibits at the time. That was not objected to by opposing counsel who was then representing the Defendants. There's no reason whatsoever why that should not be admissible.

THE COURT: Maybe not, but we still need an answer as to what you're offering it for. Expert or lay witness?

MR. COWAN: Okay. Well, I think that I did not expressly submit. I did not ask that she be allowed to testify. I think if you'd read it carefully, I never asked that she be allowed to testify as an expert. Frankly, I think she's got expertise, but no, I did not ask at the time that she be authorized to testify as an expert.

THE COURT: That's what I recall. So –

MR. MILLIGAN: I'd still—that lessens my concern over its introduction, but it still doesn't make it introducible, Your Honor. Without a Rule of Evidence or Rule of Civil Procedure that allows it, when it's not a deposition. It doesn't fall under 33. I'll make my record, Your Honor, and that's all I can do.

MR. COWAN: Your Honor, my experience over the years in state and federal court both, has been that transcripts of testimony of witnesses at court hearings, it's very admissible. And there's no reason why this should not be admitted by the Court. I'll stipulate, if he wants to, that it's 701 testimony, again. I—had I gone the extra step and asked that she be deemed an expert and to testify on that basis, very probably could have been, but that's not what happened at the time.

THE COURT: Are you objecting for purposes of 701, as well?

MR. MILLIGAN: Yes, Your Honor.

THE COURT: Okay. Why don't we go ahead and break for lunch and I'll have my ruling on this when we get back?

MR. COWAN: Thank you, Your Honor.

MR. MILLIGAN: That's fine. Your Honor, one other thing I want to say is this Plaintiff's Exhibit 13 was, obviously, introduced in that hearing I think, but it's not here and introduced today.

. . . .

MR. COWAN: Again, it is part of the deposition 12 transcript. If it—I will withdraw 13 as a separate exhibit.

THE COURT: Okay.

MR. MILLIGAN: 13 is not part of the transcript and would not come in as evidence based upon—

MR. COWAN: Well, it is part of the transcript as identified as Exhibit 7. This is just offered in a separate. It's the very same thing.

. . . .

THE COURT: Okay. We are back on the record in Susan Randolph, et al. versus Cynthia White, et al. Case No. GCV-21-150. And before we left, the Court heard arguments about whether or not Plaintiff's Exhibit 12 should be allowed. I promised you a ruling. Arkansas Rule of Evidence 804(b) specifically provides that when a declarant is not available as a witness, then former testimony given as a witness at another hearing, or the same hearing, or of a different proceeding may be admitted into evidence so long as the opposing party had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination. In this case, the Court finds that the incentive to cross-examine and the motive of cross-examine were substantially the same at each proceeding, and for that reason, I'm going to allow Plaintiff's Exhibit 12 to be admitted.

Appellees presented the rest of their case. Jeremy Vowell, the son of Susan and Tim Randolph testified that he worked on the fence line from the 1980s through 2011, except the time he was in prison from 1992–2000. He stated the fence line was down for about two years and was eventually put back up in a different form, presumably by the Whites.

14

Appellants moved for a directed verdict at the close of Appellees' case, alleging Appellees had failed to meet their burden that they were the record title owners of the Disputed Property, arguing that it takes a surveyor as an expert witness to establish property boundaries. The court denied Appellants' motion on the basis that "while she was giving little to no probative value to Hilderbrand's testimony, when viewed in the light most favorable to the non-moving parties, even little or next to no probative value is still evidence."

The Appellants then presented their case. Appellants introduced a complete copy of Mr. Higby's May 31, 2022 deposition transcript in lieu of his appearance. From the testimony gleaned during the deposition, Higby stated that he used the Appellants' deed legal description as a "starting point"; that what he surveyed was not the exact description contained in the quitclaim deed and was not simply based on the quitclaim deed legal description; that what he meant by his affidavit statement that "the boundary lines in the survey are" consistent with the property described in the Quitclaim Deed description" was that it was "[*his*] *best interpretation of the intent of that deed*." (Emphasis added.)

The only other witness to testify for Appellants was Paul White, who testified that the original fence line was the property line. He testified that Susan's grandson, Brenton, put up the T-post fence, and Paul put up the wire sometime after 2019 because the White's dog got onto the Randolph Property. Paul stated the Disputed Property runs right through the storm shelter, which is used by the White family.

On cross-examination, Paul said that the original fence line had always been the boundary between the White Property and the Randolph Property—regardless of what the

deeds stated.  Paul admitted he had lived in California from 2017 until 2020 when he returned to Arkansas, and he did not become a record owner until 2021 with the filing of the quitclaim deed. Appellants renewed their motion for directed verdict, arguing they had expert testimony and a survey establishing that the fence is the true boundary. In the alternative, Appellants argued they met their burden that the fence line is a boundary by acquiescence and has been there "forever" or, in the alternative, that they owned the property by adverse possession. The directed-verdict motion was again denied.

By order dated July 17, 2023, the circuit court found the lay-opinion testimony of Hilderbrand credible; while noting that she was not a surveyor and was not called as an expert, she had a great deal of experience with title examination. The circuit court acknowledged Higby's deposition but found it "troubling" and unpersuasive. The court also stated, "[A]n easy comparison between the survey legal description and the Quitclaim legal description in this case reveals the inconsistencies between the two descriptions."

Accordingly, the court found that Appellees made a prima facie case that they have legal title to the Disputed Property and that Appellants were in possession of the Disputed Property.

The court continued:

The property line has never been the old fence line. When the old fence line was put up, the property was owned by one owner and the purpose of the fence was to keep the livestock away from the house and out of the yard. . . .

. . . .

16

The property line is consistent with the [Appellees'] testimony about the location where Cynthia White's 2019 surveyors placed the stakes, which was approximately 24-25 feet closer to [Appellants'] property than the old fence line. Furthermore, the property line is shown in Mr. Higby's survey as the dotted line that is on the northern side 24.77 to 23.7 feet from the old fence line. This line depicts the [Appellees'] record deed legal description. This property line is consistent with Opal Hilderbrand's plat as well. The [Appellants] ordered the 2019 survey and it was their surveyor that put the stakes in place. They were certainly aware of the property line. But, even if the [Appellants] did not agree with it, or believed the old fence line was the boundary line, as Mr. White testified, they still trespassed on the [Appellees'] land by putting up the new fence 3-4 feet on the southern side, i.e., the Randolph's side, of the old fence line. The testimony was credible that the [Appellants] put up a new fence 3-4 feet on the South side of the old fence line.

The court also found Appellants failed to prove the affirmative defenses of boundary by acquiescence and adverse possession.

In granting the Appellees' claims for trespass and ejectment, the court ordered Appellants to remove the fence and storage building within fourteen days and pay a total judgment in the amount of $5,600. Appellants filed a timely notice of appeal on July 19.

### III. *The Appeal*

Appellants first argue that Appellees presented no competent proof of the boundary line, and it was erroneous to admit Hilderbrand's testimony because (a) she was not an expert; (b) she did not qualify as a lay witness; (c) she was not shown to be unavailable for trial; and (d) Appellants did not have the opportunity to cross-examine her in the same or similar hearing.

Boundary-line cases are reviewed de novo. *Smith v. Bowser*, 2020 Ark. App. 425, at 5–6. This court will not reverse findings of fact unless they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when we are left with the definite and firm conviction that a

17

mistake has been made, though there is evidence to support it. *Id.* Because the location of a boundary line is a disputed question of fact, we will affirm the circuit court's finding unless it is clearly against the preponderance of the evidence. *Id.*

This court reviews evidentiary rulings, including admitting the testimony of a witness, under an abuse-of-discretion standard. *S. Farm Bureau Cas. Ins. Co. v. Daggett*, 354 Ark. 112, 123, 118 S.W.3d 525, 530–31 (2003). A circuit court abuses its discretion if it acts improvidently, thoughtlessly or without due consideration. *Id.* at 125, 118 S.W.3d at 532. An error of law can constitute an abuse of discretion. *SMG 1054, Inc. v. Thompson*, 2014 Ark. App. 524, at 5, 443 S.W.3d 574, 577. The evidentiary error must be prejudicial to support reversal. *Young v. Blake*, 2022 Ark. App. 378, at 8, 653 S.W.3d 523, 528.

Here, Hilderbrand was not offered as an expert witness. For purposes of our analysis, we consider whether Hilderbrand's testimony is admissible as lay-witness opinion testimony under Arkansas Rule of Evidence 701, which states as follows:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) Rationally based on the perception of the witness; and (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Hilderbrand had extensive experience and knowledge as a licensed title examiner or agent with twenty-three years' experience in the industry. Rule 701 is not a rule against opinions, and it conditionally favors them. *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996). The supreme court has previously held "that Rule 701 permits lay witnesses to offer opinions and draw inferences about an event based on his or her prior experience." *Flowers*

18

*v. State*, 373 Ark. 127, 132, 282 S.W.3d 767, 771 (2008). Further, lay witnesses are permitted to give opinions that are rationally based on their "experience, . . . training, and personal observation." *Id.* Even if some debate remains about the breadth of the term "perception" in the abstract, Rule 701's language plainly states that lay testimony is permissible where it is "rationally based on the perception of the witness." *Romick v. State*, 2025 Ark. 57, 709 S.W.3d 816 (citing Ark. R. Evid. 701). In certain circumstances, a witness who has knowledge, skill, experience, and training may be qualified to testify as either an expert or a lay witness. *Dildine v. Clark Equip. Co.*, 285 Ark. 325, 686 S.W.2d 791 (1985).

Hilderbrand's testimony clearly meets the requirements of Rule 701 for such testimony to be admissible. It was both factually and rationally based on her experienced and trained title-examination perception, and it was helpful to a clear understanding of whether the parties' record deed legal descriptions conflicted—which they did not. The court did not abuse its discretion in allowing Hilderbrand's testimony under Rule 701 as layperson testimony.

We now turn to whether the asserted hearsay exception applies to allow the admission of Hilderbrand's deposition testimony. Appellants argue that Hilderbrand's testimony was hearsay and did not qualify as an exception to the hearsay rule. Appellees assert that the circuit court did not abuse its discretion in allowing Hilderbrand's testimony because (1) she was unavailable as defined in Arkansas Rule of Evidence 804(a)(5); and (2) because she was unavailable, her former testimony was admissible as an exception to the hearsay rule pursuant to Rule 804(b)(1).

19

Arkansas Rule of Evidence 804(b)(1) provides:

When the declarant is unavailable as a witness, his former testimony at another hearing of the same or different proceeding is not excluded by the hearsay rule if the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination. The burden of proving the unavailability of the witness is on the party who offers the prior testimony.

A witness is considered unavailable if he is absent from the hearing, and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. Ark. R. Evid. 804(a)(5).

By the date of the trial, Appellees' counsel reported to the court that Hilderbrand resided outside the state of Arkansas and was beyond the reach of service of process. Mr. Milligan was put on notice that Appellee's counsel intended to use Hilderbrand's testimony at trial by the filing of Appellees' trial brief. Hilderbrand's statements and supporting documentation from the Deed Plotter computer program were presented through her testimony at the motion-to-strike hearing held on February 10, 2022, at which Appellants were present and were represented by attorney Gean. This testimony was directly relevant to the Higby survey and its disclaimer provision. Gean had the opportunity at the motion hearing to discredit Hilderbrand and her testimony through cross-examination. Appellants presented no argument with respect to what other testimony they would have solicited from Hilderbrand at the trial. The circuit court did not abuse its discretion in finding that Hilderbrand was unavailable.

Moreover, it's clear from the circuit court's ruling that it independently reviewed the deeds and the survey prepared by Higby that were attached to the filed pleadings before trial

20

and from that evidence concluded that Higby's survey was inaccurate. The result was that the Disputed Property belongs to Appellees. Thus, Appellants failed to demonstrate that the circuit court's admission of Hilderbrand's deposition testimony resulted in prejudice. We decline to reverse on this point.

## IV. *Affirmative Defenses*

Once Appellees established legal title and the right to possession of the Disputed Property, the burden shifted to the Appellants to prove entitlement to the property by either boundary by acquiescence or adverse possession. This court reviews boundary-by-acquiescence actions de novo on the record and will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Stevens v. Hillenburg*, 2024 Ark. App. 295, 689 S.W.3d 695. A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Mehaffy v. Clark*, 2022 Ark. App. 268, at 5, 646 S.W.3d 651, 654.

## A. Boundary by Acquiescence

"A boundary by acquiescence may arise when adjoining property owners tacitly accept a fence or other monument as the visible evidence of a property boundary and apparently consent to it. However, neither the mere existence of a fence, nor one party's subjective belief or opinion that a fence is a boundary line will sustain a finding of acquiescence." *Teague v. Canfield*, 2014 Ark. App. 712, at 5 (internal citations omitted); *Foster v. Wasson*, 2016 Ark. App. 104, 483 S.W.3d 301. There must be *mutual* recognition or *mutual* agreement of a fence (or other monument) as the dividing line before there can be any boundary by acquiescence.

21

*Warren v. Collier*, 262 Ark. 656, 559 S.W.2d 927 (1978). In determining whether a fence between two tracts has become a boundary by acquiescence, the basic question is one of intention: namely, whether the adjoining landowners both meant to recognize the fence as a boundary. *Fish v. Bush*, 253 Ark. 27, 484 S.W.2d 525 (1972).

Appellants presented only their subjective belief or opinion that "the old fence line" or a purported "tree line" constituted a boundary line. But they failed to establish that there was ever any mutual recognition or mutual agreement that the same constituted a dividing line or a boundary by acquiescence. In his testimony, Paul White could not provide an explanation for such a claim other than just his belief. He acknowledged that the Whites had lived in California from 2017 to 2020; he stated that he took the old fence line down about 2016 or 2017, and it was not put back up until sometime in 2020; and he stated he did not ever hear Patsy Steele tell the Chronisters (Susan Randolph's parents) that she claimed to own the Disputed Property.

Accordingly, Appellants' asserted affirmative defense of boundary by acquiescence fails.

### B. Boundary by Adverse Possession

Appellants next argue that the circuit court erred in denying that Appellants proved that they adversely possessed the Disputed Property. The statutory requirements for proving adverse possession are found in Arkansas Code Annotated § 18-11-106 (Repl. 2015):

> a. To establish adverse possession of real property, the person and those under whom the person claims must have actual or constructive possession of the real property being claimed and have either:

(1)(A) Held color of title to the real property for a period of at least seven (7) years and during that time paid ad valorem taxes on the real property.

(B) For purposes of this subdivision (a)(1) color of title may be established by the person claiming adversely to the true owner by paying the ad valorem taxes for a period of at least seven (7) years for unimproved and unenclosed land or fifteen (15) years for wild and unimproved land, provided the true owner has not also paid the ad valorem taxes which were misapplied by the state and local taxing authority; or

(2) Held color of title to real property contiguous to the real property being claimed for at least seven (7) years and during that time paid ad valorem taxes on the contiguous property to which the person has color of title.

. . . .

(c) The requirements of this section are in addition to all other requirements for establishing adverse possession.

Here, Appellants failed to provide *any* proof of payment of ad valorem taxes for either the Disputed Property or their own property. Moreover, the Whites admittedly resided outside the state of Arkansas for three of the previous seven years that would be considered as relevant. Because the Appellants failed to meet the statutory requirements for adverse possession as set forth in § 18-11-106(a), there is no need to discuss the common-law elements of adverse possession.

V. *Trespass Damages and Ejectment*

Because Appellees proved the elements necessary for ejectment and trespass, and Appellants did not prove they were entitled to any affirmative defenses, the damages award is affirmed.

Affirmed.

23

KLAPPENBACH, C.J., and GLADWIN, J., agree.

*Phillip J. Milligan* and *Robert S. Tschiemer*, for appellants.

*Kenneth W. Cowan, PLC*, by: *Kenneth W. Cowan*, for appellees.